In the Matter of the Application of LIBERIAN EASTERN TIMBER CORPORATION, Putative Arbitration Award Creditor, For Enforcement of an Arbitration Award

v.

The GOVERNMENT OF the REPUBLIC OF LIBERIA, Putative Arbitration Award Debtor.

No. M–68.

United States District Court, S.D. New York.

Dec. 12, 1986.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for Liberian Eastern Timber Corp.; Richard H. Webber, Cas-par F. Ewig, Douglas R. Burnett, of counsel.

Lewis & Clarkson, New York City; (Reginald F. Lewis, Charles Clarkson, W. Kevin Wright, of counsel), Baer Marks & Upham, New York City, (Barry J. Mandel, Allan Dinkoff, of counsel), for the Government of the Republic of Liberia.

EDWARD WEINFELD, District Judge.

The Government of the Republic of Liberia ("Liberia" or "Republic") moves to vacate a judgment entered ex parte by Judge John F. Keenan enforcing an arbitration award issued under the rules of the International Centre for the Settlement of Investment Disputes ("ICSID"). The Republic also moves for a preliminary injunction enjoining the enforcement of, and execution upon, the aforesaid judgment pending determination of Liberia's motion: (1) to vacate the judgment, or, in the alternative, (2) to vacate the execution of that judgment on its property located in the United States. Liberia's contention is that the ex parte judgment violated its sovereign immunity which it did not waive.

In 1970 Liberia granted a concession to Liberian Eastern Timber Corporation ("LETCO") to harvest and exploit over 400,000 acres of Liberian timber. In 1972 LETCO began to exploit its concession and harvest, process and export the timber. In 1980, Liberia, based upon alleged shortcomings of LETCO and concerned over conservation and proper utilization of its timber resources, reduced LETCO's concession area by 279,000 acres. It later terminated the concession entirely, whereupon LETCO commenced arbitration under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "Convention") pursuant to Article IX of the parties' Concession Agreement, which provides that if there:

... shall be any question or dispute with respect to the Construction, meaning or effect of this Agreement or arising out of this Agreement or concerning the rights or obligations hereunder the parties shall have the right to require the

dispute to be settled by conciliation and arbitration as hereinafter provided. Any of the parties to such dispute may commence conciliation or arbitration proceedings by giving notice to the other party and to the Secretary-General of the International Centre for Settlement of Investment Disputes....

(2) The Rules of Conciliation and Arbitration of the International Centre for Settlement of Investment Disputes shall govern the conciliation and arbitration....

(4) The decision of the arbitrator shall be final and binding upon the parties of this Agreement....

After nominating an arbitrator on its behalf and designating a law firm to represent it,[1] Liberia refused to participate in the arbitration and commenced an action against LETCO in the Liberian courts to resolve the dispute. Nonetheless, the arbitration panel proceeded with the arbitration and it awarded LETCO $8,793,280, plus interest.

Judge Keenan, sitting in the Motion Term, Part 1, signed an ex parte order directing entry of judgment for $9,076,857.25, including interest, based upon and as specified in the award issued by the ICSID arbitration panel. A Writ of Execution was issued to the United States Marshal for the Southern District of New York, pursuant to the Judgment, on September 25, 1986.

## DISCUSSION

LETCO's opposition to Liberia's motion misapprehends Liberia's position. The Republic does not, in this litigation, seek to vacate the award as determined by the arbitration conducted pursuant to the ICSID Convention and Rules. What Liberia seeks to vacate is the judgment entered in this court based upon the arbitration award and to enjoin the issuance of executions to seize its property or assets in order to satisfy the judgment. It contends that this court was without jurisdiction to enter the judgment or to enforce the award by the issuance of executions against its property in the United States under the Foreign Sovereign Immunnities Act ("FSIA"),[2] and that it did not surrender or waive its sovereign immunity by entering into the Concession Agreement, by agreeing to arbitration, or by reducing the forestry area and then finally cancelling the contract.

In broad outline, the concession contract, which involved the Liberian forest, one of its most valuable resources, was intended to bolster Liberia's economy, create new jobs, protect the forest preserve, stimulate reforestation, and provide funds for the needs of the people of Liberia. LETCO and other entities engaged by Liberia for that purpose were regulated to ensure better utilization of the forest and to prevent waste. The granting of a concession to exploit that natural resource and the subsequent revocation of that concession were regulations of Liberia's natural resources and entailed an exercise of powers peculiar to a sovereign.[3] Indeed, LETCO does not dispute that such activities were a governmental function. However, LETCO contends that Liberia waived its sovereign im-

---

1. Liberia disputes that its appointed counsel were authorized either to represent it in the arbitration or to nominate an arbitrator on Liberia's behalf; however, this issue is not material to the decision here since Liberia is not questioning the validity of the ICSID arbitration award on this motion.

2. 28 U.S.C. § 1602, et seq.

3. *See, e.g., Mol, Inc. v. Peoples Republic of Bangladesh,* 736 F.2d 1326 (9th Cir.) (the granting and revocation of a license to export monkeys were sovereign acts), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *United States v. Ruster,* 712 F.2d 409 (9th Cir.1983)

(granting a concession to exploit natural resources entails an exercise of powers peculiar to a sovereign); *International Assoc. of Machinists and Aerospace Workers v. Organization of Petroleum Exporting Countries,* 477 F.Supp. 553 (C.D. Cal.1979) (the control over a nation's natural resources stems from the nature of sovereignty), *aff'd,* 649 F.2d 1354 (9th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). *Cf. Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (California state program which controlled the marketing of raisins grown in the state was an act of government).

munity in this case by entering into the concession contract whereby it agreed to submit any disputes arising under that contract to ICSID arbitration pursuant to the Convention, a treaty ratified by more than seventy-five countries, including the United States, the Liberian Republic and France.[4] In support of its position plaintiff emphasizes Article 54 of the Convention, which provides:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State.

The United States, as a signatory to the treaty, is such a state and the Foreign Sovereign Immunities Act is also applicable here. The broad questions presented are: whether the District Court had subject matter jurisdiction, under sections 1604 and 1605 of the FSIA, to enter judgment based upon the arbitration award,[5] and if so, whether it also had the power to issue executions, under sections 1609 and 1610 of the FSIA, upon property of Liberia to enforce the judgment. These issues require a determination of whether or not Liberia expressly or impliedly waived its sovereign immunity, and whether the property which LETCO seeks to execute the judgment upon is used for a commercial activity in the United States.

First, as to whether this Court has subject matter jurisdiction, reference has already been made to Article 54 of the Convention, which obligates the United States, as a signatory thereto, to recognize and enforce the pecuniary obligation of the award as if it were a final judgment of a

court of the United States. The ex parte judgment makes reference to 22 U.S.C. § 1650a, which provides the enabling legislation for Article 54. The FSIA provides that a foreign state is immune from the jurisdiction of the courts of the United States and of the states except for specifically enumerated exceptions.[6] One such exception occurs when "the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver."[7]

■ Liberia, as a signatory to the Convention, waived its sovereign immunity in the United States with respect to the enforcement of any arbitration award entered pursuant to the Convention. When it entered into the concession contract with LETCO, with its specific provision that any dispute thereunder be settled by arbitration under the rules of ICSID and its enforcement provision thereunder, it invoked the provision contained in Article 54 of the Convention which requires enforcement of such an award by Contracting States. That action, and reading the treaty as a whole, leaves little doubt that the signatories to the Convention intended that awards made pursuant to its provisions be given full faith and credit in their respective jurisdictions subject to such rights as are reserved by signatories thereunder.[8] Therefore, Liberia clearly contemplated the involvement of the courts of any of the Contracting States, including the United States as a signatory to the Convention, in enforcing the pecuniary obligations of the award.[9]

---

**4.** LETCO is owned and controlled by French nationals, and the parties agreed to treat it as a national of another Contracting State for purposes of the Convention, pursuant to Article 25(2)(b); hence the Convention was applicable to the contract.

**5.** *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493–94 n. 20, 103 S.Ct. 1962, 1971 n. 20, 76 L.Ed.2d 81 (1983).

**6.** 28 U.S.C. §§ 1330(a), 1604.

**7.** 28 U.S.C. § 1605(a)(1).

**8.** *Cf. Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370 (7th Cir.1985); *Tele-Oren v. Libyan Arab Republic,* 726 F.2d 774 (D.C.Cir. 1984) (Bork, J., concurring), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

**9.** Article 55 of the Convention does not affect this analysis because it only applies to the *execution* of a judgment once it is entered. Article 55 involves sections 1609 and 1610 rather than sections 1604 and 1605.

The fact that LETCO is a French entity and Liberia a foreign sovereign does not deprive the district court of subject matter jurisdiction.[10, 11] Thus, this Court had jurisdiction to direct the entry of judgment against Liberia to enforce the pecuniary obligations of the arbitration award in favor of LETCO. The motion to vacate the judgment is denied.

We next consider the separate issue of Liberia's motion to vacate the executions issued against Liberia's property or assets to enforce and collect the judgment. Article 55 of the Convention provides that "Nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to immunity of that State or of any foreign state from *execution.*" (emphasis supplied). 28 U.S.C. section 1610(a) provides exceptions to the immunity of a foreign state from execution upon a judgment entered by a Court of the United States if the property is or was "used for a commercial activity in the United States."

The essence of Liberia's argument concerning its immunity from execution of the judgment, however variously stated, is that the executions upon the judgment entered in this court have been served on, among other entities, shipowners located in the United States and agents of Liberia appointed to collect from such shipowners tonnage fees, registration fees and other taxes due the government—that these fees are collected as taxes designed to raise revenues for the Republic of Liberia and, as such, are sovereign not commercial assets under the Liberian maritime law and regulations, and thus immune from execu-

tion since they are not "property ... used for a commercial activity."

■ LETCO, with respect to the registry fees and tonnage taxes that have been levied upon within this district, does not dispute that they are tax revenues ultimately payable to Liberia, but asserts that of the gross amounts due and collected from companies under Liberian registry, 27% is retained for operating and administrative expenses and profits by United States corporations or citizens who render services in collecting the funds. In consequence, LETCO argues that those payments reflect commercial activities within the purview of section 1610(a). Upon the argument of this motion, LETCO conceded that if, instead of employing United States corporations or citizens to collect the registry fees and tonnage taxes, Liberia had engaged personnel of the Liberian Consulate stationed in the United States, that taxes so collected would be beyond the reach of execution.[12] This rather fine distinction is without substance. It does not make sense to say that because Liberia engaged and gave employment to United States citizens, instead of utilizing the services of its consulate employees stationed in the United States, it thereby forfeited its sovereign immunity with respect to its right to the taxes so collected. The nature of the amounts due from ships flying the Liberian flag, the registration fees or taxes, is constant. They are tax revenues for the benefit of the Government of Liberia, and the method employed to effect their collection does not destroy the basic nature of that collection. The levy and collection of taxes intended to

---

**10.** *Verlinden B.V. v. Central Bank of Nigeria,* 488 F.Supp. 1284 (S.D.N.Y.1980), *aff'd on other grounds,* 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983).

**11.** The Act of State Doctrine is not applicable here because the enforcement of the arbitration award, which is at issue here, does not involve the courts of the United States sitting in judgment on the acts of the government of another. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). In this case, a United States court is merely being

asked to enforce an award pursuant to an arbitration to which Liberia consented (in fact, the Convention gives the arbitration panel the authority to determine its own jurisdiction and competency) and which it consented to the enforcement of by the Contracting States. No adjudication or consideration of the merits of the award or of the underlying governmental activity is involved.

**12.** Hearing minutes, November 25, 1986, at 18. *See also* H.Rep. No. 94–1487, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad. News 6604, 6615.

serve as revenues for the support and maintenance of governmental functions are an exercise of powers particular to a sovereign. Accordingly, Liberia's motion to vacate the executions upon such funds is granted and the United States Marshal is directed to release the funds so attached (less his lawful fees). Further, LETCO is enjoined from issuing executions against such registry fees and taxes; however, LETCO is not enjoined from issuing executions with respect to any properties which are used for commercial activities and that may fall within one of the exceptions delineated in section 1610.

So ordered.