**SEETRANSPORT WIKING TRADER SCHIFFFARHTSGESELLSCHAFT MBH & CO., KOMMANDITGESELLS-CHAFT, Plaintiff,**

v.

**NAVIMPEX CENTRALA NAVALA, Defendant.**

**No. 88 Civ. 2132 (VLB).**

United States District Court, S.D. New York.

April 2, 1992.

John J. Devine, Jr., Poles, Tublin, Patestides & Stratakis, New York City, for plaintiff.

Radu Herescu, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This is a suit to enforce a French judicially affirmed arbitration award pursuant to treaty.

## FACTUAL BACKGROUND

On January 26, 1980 plaintiff and defendant entered into a contract under which defendant agreed to build certain vessels for plaintiff, a West German shipowner. Defendant was a state owned Romanian foreign trading company engaged in shipbuilding, which actively utilized Romanian government commercial offices in Manhattan to solicit business.

The contract between plaintiff and defendant was never performed, and resultant disputes were submitted to arbitration in Paris pursuant to the contract. On November 2, 1982 and March 26, 1984 the arbitration board rendered interim and final awards against defendant for 6,000,000 Deutsche Marks plus interest and half of the arbitration costs. Defendant appealed to the French Court of Appeals, which on March 4, 1986 affirmed the award.

By decree of the Romanian Council of State dated June 26, 1987 the defendant was dissolved. On or about July 1, 1987 all of the defendant's assets and liabilities were transferred to a newly formed company, Uzinexportimport ("Uz")

On March 28, 1988 plaintiff brought this suit seeking enforcement of the arbitration award or, in the alternative, adoption of the judgment of the Court of Appeals of Paris as a United States court judgment.

Plaintiff served the summons and complaint on the Romanian Commercial Attache's office in New York, and it was sent by the clerk of this court by mail to defendant at its last known address pursuant to 28 U.S.C. § 1608(a)(3); a postal receipt was obtained. Defendant received actual notice; it contacted plaintiff about the matter.

Both parties have moved for summary judgment. Plaintiff also has moved to amend the complaint to add Uz as an additional defendant, as successor to the rights and obligations of the defendant.

Defendants argues (1) that this court lacks personal jurisdiction; (2) that service of process was inadequate; and (3) that failure to join an Uz as a party was fatal.

## SUBJECT MATTER JURISDICTION

■ Preliminarily, I must determine whether or not this court has subject matter jurisdiction, which implicates inquiry into the applicability or inapplicability of sovereign immunity. The Foreign Sovereign Immunities Act, and particularly 28 U.S.C. § 1330, grants to district courts original jurisdiction in any nonjury civil action against a foreign state [1] under circum-

---

1. Pursuant to section 1603(a) a "foreign state" includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state. Subsection (b) provides:

"An 'agency or instrumentality of a foreign state' means any entity—
"(1) which is a separate legal person, corporate or otherwise, and

"(2) which is an organ of a foreign state or political subdivision therefor, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and ..."

stances in which the foreign state is not entitled to immunity under sections 1605–1607 of Title 28 or under any applicable international agreement.[2] The Act places no limitations on the plaintiff's citizenship; the legislative history reveals an intent not to limit jurisdiction under the Act to an action brought by American citizens. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983).

Paragraph 9 of defendant's Statement of Material Facts Pursuant to Rule 3(g) of the Civil Rules of this court states that "Defendant was a state owned foreign trade company organized under the laws of the Socialist Republic of Romania with its place of business at Galatz, Socialist Republic of Romania." In paragraph 22 of its answer, defendant also alleges that it "is a state foreign trading company, wholly owned by the Romanian Government and, as such, is an instrumentality of Romania within the meaning of FSIA 28 U.S.C., Sect. 1603(b)." State trading companies and state-owned export associations have been considered within the definition of "agency or instrumentality" of a foreign state, treated as a foreign state under 28 U.S.C. § 1603(a). *S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411 (2d Cir.1983) *cert. denied* 464 U.S. 850, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983) (involving a Romanian trading company as well as Romanian bank), citing H.Rep. 1487, 94th Cong., 2d Sess. 15–16, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6613–6614.

28 U.S.C. § 1605(a)(6) was enacted in 1988. It provides that a foreign state (or under the applicable definitions its instrumentality), lacks immunity where the action is brought to confirm an award made pursuant to an agreement to arbitrate if the agreement or award is governed by a treaty or other international agreement binding upon the United States which calls for the recognition or enforcement of arbitral awards. As a procedural and jurisdic-

tional statute not affecting substantive rights, § 1605(a)(6) would seem, other things being equal, to be applicable to the facts before me as they exist today, at the time of decision. See *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951); *Able v. Upjohn Co.*, 829 F.2d 1330 (4th Cir.1987), *cert. denied* 485 U.S. 963, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988). No retroactive impairment of substantive rights would seem to be caused by application in this case of this jurisdictional provision. Compare *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (applying the Contract Clause of Article I section 10 of the Constitution of the United States).

An important question is raised, however, by Section 3 of Public Law 100–640 which contained the 1988 amendments. Section 3 provided:

"The amendments made by this Act shall apply to actions commenced on or after the date of the enactment of this Act [November 9, 1988]." The present suit was commenced in March, 1988. Although the parties did not raise the Section 3 issue, I must consider it in determining the question of subject matter jurisdiction.

The plain language of Section 3 is affirmative: it merely states that the amendments "shall apply" to subsequently commenced suits, but there is undoubtedly an implied legislative intent to avoid potentially unfair or controversial retroactive application.

This action could have been discontinued and recommenced after November 9, 1988, the date of enactment of Public Law 100–640, without incurring any statute of limitations problems. Thus, the relevant question here is how Section 3 is to be construed to apply to a suit which could have been, but was not, dismissed and refiled to take advantage of the 1988 amendment. Was the failure to refile when this could

---

2. 28 U.S.C. § 1330(a) provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement."

readily have been done harmless error under F.R.C.P. 61 and 28 U.S.C. § 2111, or is it a fatal if technical jurisdictional error?

In *Belasco v. W.K.P. Wilson & Sons*, 833 F.2d 277, 282 (11th Cir.1987), a defendant filing papers to remove a case from state to federal court under 28 U.S.C. § 1441 failed to secure joinder in the application by another defendant as required. The court permitted the omission to be cured:

"While we are impressed by the authorities cited by plaintiffs in support of their argument that Wilson's failure to join in the removal ... made it defective, we must agree ... that given the novelty, complexity, and technicality of the question, the ends of justice and judicial efficiency are best served by treating the removal petition as if it had been amended to include Wilson. *See* 28 U.S.C. § 1653 ('Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.'); Fed.R.Civ.P. 15(a) ('[L]eave [to amend] shall be freely given when justice so requires.')"

Rule 1 of the Federal Rules of Civil Procedure directs the court to interpret the Rules, and presumably other procedural law, to promote "the just, speedy and inexpensive determination of every action." This objective is implemented by 28 U.S.C. § 1653 which permits "defective allegations of jurisdiction" to be "amended, upon terms, in the trial or appellate courts." This would appear to allow plaintiff to correct the failure to refile provided no substantive rights would have been affected—i.e. if the case would not have been time barred on November 10, 1988.

28 U.S.C. § 1653 is supplemented by F.R.C.P. 15, which allows amendment of pleadings, amounting to a new filing, if the prerequisites set forth in the Rule are met. In particular, addition of Uz would represent a new filing subsequent to November 9, 1988, and it would relate back to the original filing date for purposes of the statute of limitations under F.R.C.P. 15(c) inasmuch as Uz is a successor entity to the defendant, charged with all notice and other prerequisites set forth in the Rule. Relation back for purposes of limitations only would, of course, only be appropriate if substantive rights are unaffected—which is the case here if suit could have been brought or renewed on November 10, 1988. Joinder of Uz would moot the objection raised by defendant that Uz is an indispensable party not yet joined.

It would appear appropriate to utilize 28 U.S.C. § 1653 and F.R.C.P. 15 to deem an act done, which could properly have been done, where—but only where—there is no prejudice to substantive rights and no contradiction of explicit language in a governing document. Here the intent of the negative implications of Section 3 rather than any explicit limitation is under consideration, and no substantive rights are adversely affected.

Failure of defendant to raise the question of the effective date of 28 U.S.C. § 1605(a)(6) cannot establish otherwise nonexistent jurisdiction by estoppel. But it does support the reasonableness of the interpretation of 28 U.S.C. § 1653 dealing with jurisdictional matters, and of F.R.C.P. 15 concerning amendments to pleadings, to allow failure to refile to be cured by addition of Uz at this stage when section 1605(a)(6) is clearly applicable, provided that the action could validly have been filed on November 10, 1988.

### STATUTE OF LIMITATIONS

 The question of when the running of the applicable period of limitations began is relevant both to the permissibility of the filing of this case in March 1988, and to the jurisdictional question affected by the permissibility of its filing on November 10, 1988, and hence will be discussed at this juncture.

9 U.S.C. § 207 permits an order to be sought confirming an award within "three years after an arbitral award falling under the Convention is made ..."

Under French law, the award became effective when but only when it was upheld on appeal on March 4, 1986 (Affidavit of Michael Wolfer, April 25, 1989). This indicates that the action could have been brought at any time up to March 4, 1989,

clearly embracing all dates in 1988. Consequently, no statute of limitations bar existed as of March, 1988, nor is there any barrier to the court deeming refiling to have been made pursuant to 28 U.S.C. § 1653 or Rule 15 as of November 10, 1988.

## PERSONAL JURISDICTION AND SERVICE

■ 28 U.S.C. § 1330(b) grants the federal courts personal jurisdiction over a foreign state so long as service is made through the procedures provided in 28 U.S.C. § 1608, combined with actual notice, all of which were fulfilled here as described above. Moreover, defendant which deliberately—and "not occasionally or casually, but with a fair measure of permanence or continuity," *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983)—promoted ship sales through its governmental office in Manhattan, of the very type involved in the present case, had sufficient contacts with the United States and this district to satisfy due process. See Affidavit of William Perry, May 3, 1989. This conclusion is buttressed by two further circumstances which enhance the fairness of permitting suit against defendant in this country:

(a) International enforcement of arbitration under the Convention on the Recognition of Foreign Arbitral Awards of June 10, 1958, pursuant to 9 U.S.C. § 201 and contained as a note to 9 U.S.C.A. 201, is only practicable if awards can be enforced wherever defaulters have assets and not merely where they have engaged in the business out of which the arbitration grew. The United States, France, Romania, and the Federal Republic of Germany acceded to the convention. The convention lists various barriers to enforcement, such as lack of notice of the arbitration (Article V(1)(b)), but does not require that the underlying activity occur in the enforcing state—a requirement which would, of course, defeat the effectiveness of the convention, an outcome not to be presumed.

(b) Prejudgment attachments to obtain *quasi in rem* jurisdiction over assets of foreign instrumentalities are barred, absent specific explicit separate consent, see *S & S Machinery Co v. Masinexportimport,* 706 F.2d 411 (2d Cir.1983), thus making it inappropriate to strain to deny personal jurisdiction to reach such assets by other means where minimal contacts exist and the objectives of an international convention call for this result.

## ADDITION OF UZ AS DEFENDANT

■ Defendant states without qualification or limitation in its Memorandum of Law at 18 that Uz is "successor in interest to defendant" and "a state owned foreign trade company." As successor, it is bound by the acts of the current defendant, which cannot avoid its obligations by changing its name.

## DISPOSITION OF PENDING MOTIONS

For the reasons discussed above, I find that the court has subject matter and personal jurisdiction, that no statute of limitations barrier exists to enforcement of the French court's affirmance of the arbitral award in this case, and that Uz should be joined as an additional defendant, thus eliminating any objection predicated upon failure to join it.

Defendant's motion for summary judgment is denied and the motions of plaintiff for summary judgment and for addition of Uz as an additional defendant are granted.

Settle judgment on notice.

SO ORDERED.