SEETRANSPORT WIKING TRADER SCHIFFARHTSGESELLSCHAFT MBH & CO., KOMMANDITGESELLSCHAFT, Plaintiff–Appellee,

v.

NAVIMPEX CENTRALA NAVALA and Üzinexportimport, Defendants–Appellants.

No. 372, Docket 92–7580.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1992.

Decided March 16, 1993.

As Amended May 25, 1993.

L. Kevin Sheridan, Smithtown, NY (Radu Herescu, New York City, of counsel), for defendants-appellants.

William J. Brady, III, New York City (John G. Poles, Christopher J. Papajohn, Poles, Tubelin, Patekis & Stratakis, New York City, of counsel), for plaintiff-appellee.

Before: OAKES, NEWMAN and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Defendants Navimpex Centrala Navala ("Navimpex") and Uzinexportimport ("Uz") appeal from a judgment entered in the United States District Court for the South-

ern District of New York, Vincent L. Broderick, *Judge*, which granted, *inter alia*, plaintiff Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft's ("Seetransport") cross-motion for summary judgment and denied the defendants' motion for summary judgment. *Seetransport Wiking Trader v. Navimpex Centrala*, 793 F.Supp. 444 (S.D.N.Y.1992). For the reasons set forth below, we reverse the judgment of the district court insofar as it granted the plaintiff's cross-motion for summary judgment and denied the defendants' motion for summary judgment. We remand the case with instructions to grant the defendants' motion for summary judgment as to the cause of action in which plaintiff seeks to enforce the arbitral award, on the ground that the enforcement of such award is time-barred. We further remand the case for the purpose of determining, with respect to the remaining cause of action, whether the decision of the Court of Appeals of Paris is enforceable in France and thus should be enforced by the district court.

## BACKGROUND

Seetransport is a corporation organized under the laws of the Federal Republic of Germany and engaged in maritime commerce as a shipowner and operator. Navimpex was a trading company organized under the laws of the Socialist Republic of Romania and was engaged in the business of shipbuilding.

On or about January 26, 1980, Seetransport and Navimpex entered into a Contract of Sale for the building and sale by Navimpex to Seetransport of four bulk carriers. According to the complaint, the carriers were to be delivered over a two year period from November or December of 1980 to February or March of 1982. Several disputes arose between the parties and the contract was never performed. Pursuant to Article XIII of the Contract of Sale, the parties submitted their disputes to arbitration before the Court of Arbitration of the International Chamber of Commerce in Paris, France (the "I.C.C."). In accordance with the Contract of Sale, French "materi-

al" law governed the interpretation of the contract. The arbitrators, after holding hearings, issued their interim and final awards, on November 2, 1982, and March 26, 1984, respectively. Pursuant to the final award, Navimpex was directed to pay Seetransport six million deutsche marks, plus interest, at the rate of eight percent per year, from January 1, 1981 until the date of effective payment. Navimpex was further directed to pay Seetransport 72,000 U.S. dollars as reimbursement for Navimpex's unpaid share of the cost of the arbitration.

Dissatisfied with the decision of the arbitrators, Navimpex appealed to the Court of Appeals of Paris "for the annulment of the arbitration award." The Court of Appeals issued its decision on March 4, 1986, dismissing Navimpex's appeal.

On March 28, 1988, Seetransport commenced this action in the United States District Court for the Southern District of New York, naming Navimpex as the sole defendant. In its complaint, Seetransport asserted two causes of action. One cause of action alleged that Seetransport was entitled to have the decision of the Court of Appeals of Paris converted into a United States judgment. A second cause of action sought, pursuant to the provisions of 9 U.S.C. §§ 201–208 (1988), entitled the "Convention on the Recognition and Enforcement of Foreign Arbitral Awards," enforcement of the foreign arbitral award issued by the I.C.C. Seetransport demanded judgment in the amount of $6,250,000.00, with interest.

Seetransport attempted to serve Navimpex both by delivering a copy of the Summons and Complaint, along with a Romanian translation thereof, to the Romanian Commercial Counselor's Office in New York, as an agent of Navimpex, and also by having the Clerk of the Court for the Southern District of New York mail a copy of the Summons and Complaint to Navimpex at its last known address. Thereafter, the Clerk received a postal receipt indicating that the Summons and Complaint had been received. However, unknown to Seetransport, at the time of service of process,

Navimpex had been dissolved by a decree of the State Council of the Socialist Republic of Romania. That same decree transferred Navimpex's personnel to a newly formed company, Uz.

Navimpex answered the complaint and asserted a number of affirmative defenses; thereafter, Navimpex moved for summary judgment on the basis of several of its affirmative defenses, namely: the district court lacked *in personam* jurisdiction; service of process was insufficient; the action for recognition and enforcement of the foreign arbitration award was time-barred by the applicable statute of limitations; and an indispensable party to the action, Uz, had not been joined and was not within the jurisdiction of the district court. In support of its summary judgment motion, Navimpex submitted an affidavit from the person who had been the general manager of Navimpex from 1984 until the end of June 1987, at which time he became the deputy general manager of Uz. According to this affidavit, Navimpex had been dissolved in late June 1987 by a decree of the State Council of the Socialist Republic of Romania. By that same decree, all of Navimpex's assets and liabilities were taken over by Uz.

In turn, Seetransport moved for an order pursuant to Rule 19 of the Federal Rules of Civil Procedure to join Uz as a party defendant and cross-moved for summary judgment against both defendants. In its summary judgment motion, Seetransport asserted that the district court should recognize the judgment of the Court of Appeals of Paris, or alternatively, recognize the arbitral award issued by the I.C.C.

The district court first examined whether it had subject matter jurisdiction over the action, which, as it recognized, implicated the Foreign Sovereign Immunities Act ("FSIA"), codified at 28 U.S.C. §§ 1330, 1332(a)(2)–(4), 1391(f), 1441(d) and 1602–1611 (1988 & Supp. II 1990). The court determined that since Navimpex was a for-

eign trading company, wholly owned by the Romanian Government, it qualified as an "agency or instrumentality" of a foreign state and therefore, under § 1603(a), could be treated as a foreign state. The court then determined that Navimpex lacked sovereign immunity under the newly enacted 28 U.S.C. § 1605(a)(6). As the court noted, § 1605(a)(6) appeared to be the applicable jurisdictional provision because it expressly provided "that a foreign state (or under the applicable definitions its instrumentality), lacks immunity where the action is brought to confirm an award made pursuant to an agreement to arbitrate if the agreement or award is governed by a treaty or other international agreement binding upon the United States which calls for the recognition or enforcement of arbitral awards." *Seetransport Wiking Trader*, 793 F.Supp. at 446.

However, as the court further observed, Section 3 of Public Law 100–640, which the district court believed was the statute that added § 1605(a)(6),[1] provided that " '[t]he amendments made by this Act shall apply to actions commenced on or after the date of the enactment of this Act [November 9, 1988].' " *Seetransport Wiking Trader*, 793 F.Supp. at 446 (quoting Admiralty Suits Against Foreign States, Pub.L. No. 100–640, 102 Stat. 3333, 3334 (1988)). Because the underlying suit was commenced in March 1988, the district court felt it necessary to address the impact of Section 3 on the issue of subject matter jurisdiction. Although it did express a desire to avoid unfair retroactive application, the court determined that subject matter jurisdiction existed, essentially because the action could have been discontinued and recommenced after November 9, 1988, without incurring any statute of limitations problems. The court stated that Navimpex's failure to raise the question of the effective date of § 1605(a)(6) supported its conclusion that Seetransport's failure to re-

1. As the parties note in their briefs, the district court erred when it referred to Public Law 100–640 as the statute that added § 1605(a)(6) to the FSIA, when in fact it was Public Law 100–669. Public Law 100–669 became effective on No-

vember 16, 1988. *See* Implementation of the Inter-American Convention on International Commercial Arbitration, Pub.L. No. 100–669, 102 Stat. 3969, 3970 (1988).

file the complaint on November 10, 1988— when this could have readily been done without incurring any statute of limitations problem—was not a fatal technical jurisdictional error.

The court then addressed the statute of limitations issue. After examining French law, the court determined that the arbitral award became final on March 4, 1986, the date on which the Court of Appeals of Paris dismissed Navimpex's appeal. Thus, since 9 U.S.C. § 207 permits an action seeking to confirm an arbitral award to be brought within " 'three years after an arbitral award falling under the Convention is made ... [,]' " the court concluded that the statute of limitations did not bar this suit, which had been commenced on March 28, 1988. *Seetransport Wiking Trader*, 793 F.Supp. at 447–48 (quoting 9 U.S.C. § 207).

Turning to the issue of personal jurisdiction and service of process, the district court noted that 28 U.S.C. § 1330(b) granted federal courts jurisdiction over a foreign state so long as service is made in accordance with the procedures set forth in 28 U.S.C. § 1608, combined with actual notice, all of which, it determined, were satisfied by Seetransport. Moreover, the court determined that Navimpex had "deliberately" promoted ship sales through its governmental office in Manhattan, and concluded that these acts provided "sufficient contacts with the United States ... to satisfy due process." *Seetransport Wiking Trader*, 793 F.Supp. at 448.

Finally, the district court determined that Uz was Navimpex's successor in interest and a state-owned foreign trading company, and could not avoid its obligations simply "by changing its name." *Seetransport Wiking Trader*, 793 F.Supp. at 448. The court thereafter granted Seetransport's motions for the addition of Uz as a defendant and for summary judgment on the cause of action seeking recognition and enforcement of the arbitral award pursuant to 9 U.S.C. §§ 201–208, and denied the defendants' motion for summary judgment. This appeal followed.

## DISCUSSION

On appeal, Navimpex and Uz argue that the district court's grant of summary judgment in favor of Seetransport should be reversed on a number of grounds. Specifically, they contend that the district court lacked both subject matter and personal jurisdiction over either defendant and that the enforcement of the foreign arbitral award is time-barred under 9 U.S.C. § 207. Further, appellants argue that the decision of the Court of Appeals of Paris is not enforceable as a foreign judgment—an issue that was presented to the district court, but was not addressed by the court.

### I. Subject Matter Jurisdiction

Section 1330(a) of the FSIA provides:

The district courts shall have original jurisdiction without regard to amount in controversy of any non-jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

Under § 1603(a) a "foreign state" includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state. Subsection (b) of § 1603 defines "an agency or instrumentality of a foreign state" as including any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof,....

It seems clear that Navimpex, as a wholly-owned state foreign trading company organized under the laws of the Socialist Republic of Romania, qualifies as an agency or instrumentality of a foreign state under § 1603. Accordingly, as the district court correctly determined, the FSIA applies and Navimpex enjoys sovereign immunity unless its conduct falls within one of the statutory exceptions to sovereign immunity.

Seetransport argues, and Navimpex vigorously disputes, that the district court had two independent bases for subject matter jurisdiction—28 U.S.C. § 1605(a)(6), which provides for jurisdiction for the enforcement of a foreign arbitration award against a foreign state, and 28 U.S.C. § 1605(a)(1), which provides for jurisdiction over a foreign state where the foreign state has waived its immunity from suit either explicitly or implicitly. Since, as we discuss below, Navimpex implicitly waived any sovereign immunity defense, thereby conferring upon the district court subject matter jurisdiction over this action, pursuant to § 1605(a)(1), we need not address the district judge's ruling regarding retroactive application of § 1605(a)(6).

■ Section 1605(a)(1) provides that a foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case "in which the foreign state has waived its immunity either explicitly or by implication...." Seetransport urges us to find that by agreeing to arbitrate pursuant to the rules of the I.C.C. in Paris, subject to French law, Navimpex implicitly waived its sovereign immunity. Seetransport points to the legislative history of § 1605(a)(1), which states, "with respect to implicit waivers, the courts have found such waivers in cases where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617. Navimpex responds that to construe and apply § 1605(a)(1)'s waiver exception in this open-ended, essentially limitless fashion, would ignore Congress's due process concerns in enacting the FSIA, and would produce an absurd result at variance with any fair understanding of the term "waiver."

■ Navimpex's concerns are not without some merit. "Federal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir.1991) (citations omitted). Indeed, courts within this Circuit have noted that if the language of the legislative history was applied literally, a foreign government would be subject to the United States's jurisdiction simply because it agreed to have the contract governed by another country's laws, or agreed to arbitrate in a country other than itself, even though the agreement made no reference to the United States. Such an interpretation of § 1605(a)(1)'s "implicit waiver" exception would vastly increase the jurisdiction of the federal courts over matters involving sensitive foreign relations. *See, e.g., Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity Ltd.,* 689 F.Supp. 1340, 1351 (S.D.N.Y.1988); *Verlinden B.V. v. Central Bank of Nigeria,* 488 F.Supp. 1284, 1302 (S.D.N.Y.1980) (Weinfeld, J.), *aff'd on other grounds,* 647 F.2d 320 (2d Cir.1981), *rev'd,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Consequently, courts within this Circuit have concluded that sovereign immunity is not waived in the courts of this country simply because a sovereign entered into a contract that named a third country for arbitration or designated the laws of a third nation to govern the interpretation of the contract. *See, e.g., Maritime Ventures Int'l, Inc.,* 689 F.Supp. at 1351; *Verlinden,* 488 F.Supp. at 1300–02.

*Verlinden* involved a claim brought by a Dutch corporation, Verlinden, against the Central Bank of Nigeria, an instrumentality of Nigeria, in which Verlinden claimed that the Central Bank of Nigeria had implicitly waived its sovereign immunity under the FSIA simply because the contract between the parties had a provision directing the parties to arbitrate before the I.C.C. in Paris and to have the contract governed by the laws of the Netherlands. In dismissing Verlinden's complaint, Judge Weinfeld rejected this assertion.

The factual scenario in *Verlinden* differs from the instant case. Significantly, Verlinden was not suing to have an arbitral award enforced—indeed it is unclear whether the parties ever submitted their dispute to arbitration. Rather, Verlinden's action was based upon an anticipatory

breach of an irrevocable documentary letter of credit. Here, the parties have, in fact, submitted their disputes to arbitration before the I.C.C. and that arbitration, pursuant to the parties' contract, was to be governed by French law. Seetransport now seeks to have the arbitral award issued by the I.C.C. recognized and enforced in the courts of this country, pursuant to the "Convention on the Recognition and Enforcement of Arbitral Awards" (the "Convention"), 9 U.S.C. §§ 201–208, to which Romania, France and the United States are all signatories. *See id.* § 201, Article XVI of the Convention. This Convention specifically declares that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought...." *Id.* § 201, Article I of the Convention. It further provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon,...." *Id.* § 201, Article III of the Convention. Thus, when a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory State must have contemplated enforcement actions in other signatory States.

Indeed, this very distinction was noted in the *Verlinden* decision when it commented on, and distinguished, *Ipitrade Int'l, S.A. v. Federal Republic of Nigeria*, 465 F.Supp. 824 (D.D.C.1978)—an action brought to enforce an arbitral award made by a French tribunal, applying Swiss law, against Nigeria. In *Ipitrade*, Nigeria, the United States, France and Switzerland were all signatories to the Convention. Accordingly, the *Ipitrade* court concluded that Nigeria's agreement to settle all disputes arising under the contract in accordance with Swiss law and by arbitration under I.C.C. rules constituted a waiver of sovereign immunity under the Act. Since the Convention expressly "federalized" all enforcement actions, Nigeria clearly had to have contemplated enforcement of any arbitral awards in any of the other signatory

States, and therefore had implicitly waived its defense of sovereign immunity under the FSIA. *See Verlinden*, 488 F.Supp. at 1300 n. 84; *see also Liberian Eastern Timber Corp. v. Government of the Republic of Liberia*, 650 F.Supp. 73, 76 (S.D.N.Y.1986) (Weinfeld, J.), *aff'd without opinion*, 854 F.2d 1314 (2d Cir.1987).

We are aware that in *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 376–78 (7th Cir.1985) (per curiam), the Seventh Circuit rejected the argument that by signing an international agreement, the sovereign had waived its sovereign immunity. In *Frolova*, the plaintiff claimed that the Soviet Union had, under § 1605(a)(1), implicitly waived its sovereign immunity because it was a signatory to the United Nations Charter and the Helsinki Accords.

The Seventh Circuit concluded that there was no evidence from the language, structure or history of the United Nations Charter or the Helsinki Accords that implied a waiver of the Soviet Union's sovereign immunity. According to the *Frolova* court, the language of the agreements was "vague" and "general" and consequently there was no reason to conclude

> that the nations that are parties to these agreements anticipated when signing them that American courts would be the means by which the documents' provisions would be enforced. To the contrary, ... the countries that agreed to the United Nations Charter and the Helsinki Accords retained considerable discretion in implementing the provisions on which Frolova's suit [was] based....

*Id.* at 378. The nebulous character of these agreements, coupled with the reluctance of courts to construe § 1605(a)(1) broadly, *see Frolova*, 761 F.2d at 377 & n. 10, led the Seventh Circuit to conclude that sovereign immunity had not been waived.

The facts surrounding *Frolova* make it distinguishable from the case at hand. As we have stated, Seetransport seeks recognition and enforcement of the I.C.C. arbitral award pursuant to the Convention, which expressly permits recognition and enforcement actions in Contracting States. Thus, when Navimpex entered into a con-

tract with Seetransport that had a provision that any disputes would be submitted to arbitration, and then participated in an arbitration in which an award was issued against it, logically, as an instrumentality or agency of the Romanian Government—a signatory to the Convention—it had to have contemplated the involvement of the courts of any of the Contracting States in an action to enforce the award. Accordingly, we conclude that under § 1605(a)(1), Navimpex implicitly waived any sovereign immunity defense and, therefore, the district court had subject matter jurisdiction.

## II. Personal Jurisdiction

 As noted above, 28 U.S.C. § 1330(a) grants the district courts subject matter jurisdiction, without regard to amount in controversy, in any nonjury civil action against a foreign state provided that the foreign state is not entitled to immunity under, *inter alia*, 28 U.S.C. §§ 1605–1607.

Subsection (b) of 28 U.S.C. § 1330 provides:

> Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

Therefore, the FSIA "makes the statutory aspect of personal jurisdiction simple: subject matter jurisdiction plus service of process equals personal jurisdiction." *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Part I above provided the first variable of the personal jurisdiction equation—subject matter jurisdiction. We now turn to the issue of whether the second variable in the equation, service of process, was properly effectuated.

Section 1608(b) provides as follows:

> Service in the courts of the United States and the States shall be made upon an agency or instrumentality of a foreign state:
>
> . . . .

> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

> (3) if service cannot be made under paragraph[ ] . . . (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> . . . .

> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served,
>
> . . . .

In this case, service of process upon Navimpex was undertaken pursuant to § 1608(b)(2) and § 1608(b)(3)(B). Seetransport delivered a copy of the Summons and Complaint, together with a Romanian translation thereof, to the Romanian Commercial Counselor's Office in New York, pursuant to § 1608(b)(2). In addition, the Clerk of the Court mailed a copy of the Summons and Complaint to Navimpex at its last known address, pursuant to § 1608(b)(3)(B). The Clerk received a postal receipt indicating that the Summons and Complaint had been received.

 Nonetheless, appellants argue that the district court never acquired personal jurisdiction over either Navimpex or Uz. Appellants argue that the attempted service of process via the Romanian Commercial Counselor's Office was invalid. Appellants further argue that service by mail was invalid because Navimpex had been dissolved by a decree of the Romanian Government, and therefore, "was no longer a juridical entity." According to appellants, the attempted service of process on the "previously dissolved" Navimpex could not be deemed proper service upon Uz.

We disagree. While it is true that Navimpex was dissolved by official decree, it is also true that by that same decree Navimpex's assets and liabilities, including the arbitration award herein, were taken over by Uz. Furthermore, the law in this country is clear that where one company transfers all its assets to another company, the latter is responsible for the debts and liabilities of the transferor if, *inter alia*, the transferee expressly or impliedly agrees to assume such debts or the purchasing corporation is merely a continuation of the transferor. *See Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1534–35 (S.D.N.Y.1985); *Schumacher v. Richard Shear Co., Inc.*, 59 N.Y.2d 239, 245, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, 440 (1983); *see also* 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7122, at 231 (Stephen M. Flanagan et al. eds., perm. ed. 1990).

We therefore conclude that Seetransport's service of process upon appellants complied with the requirements of § 1608(b)(3)(B). Our inquiry does not end there, though. Indeed, "the [FSIA] cannot create personal jurisdiction where the Constitution forbids it." *Texas Trading*, 647 F.2d at 308. Consequently, in addition to each finding of personal jurisdiction made pursuant to the FSIA, we make a due process scrutiny of the court's power to exercise its authority over the defendant. *Id.* A district court's ruling on a jurisdictional question is reviewed *de novo*. We are guided by the following standard:

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir.1990) (per curiam) (citation omitted), *cert. denied*, — U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991).

■ Bearing this standard in mind, we agree with the district court's conclusion that Navimpex had sufficient "minimum contacts" with the United States to satisfy due process requirements. *See In re Grand Jury Subpoena Directed to Marc Rich & Co.*, 707 F.2d 663, 667 (2d Cir.1983). The district court relied upon the affidavit of William Perry, the President of the International Union of Industrial Service, Transport and Health Employees, District 6, a nonparty to this suit, in which it was stated that on several occasions Perry had been asked, through the Romanian Commercial Counselor's Office, to solicit business on behalf of Navimpex/Uzinexportimport. Perry's affidavit described the Office of the Economic Counselor as a commercial office, whose main purpose was to sell goods on behalf of the various state-owned enterprises that it represented, including Navimpex/Uzinexportimport. Accordingly, the district court determined that Navimpex had "deliberately—and 'not occasionally or casually, but with a fair measure of permanence or [sic] continuity,' *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983)—promoted ship sales through its governmental office in Manhattan, of the very type involved in the present case[.]" *Seetransport Wiking Trader*, 793 F.Supp. at 448. Navimpex has alleged no facts that dispute this conclusion. Accordingly, we conclude that the district court did not err in determining that it had personal jurisdiction over Navimpex and Uz.

### III. Statute of Limitations

■ Navimpex contends that Seetransport's claim seeking an order confirming the I.C.C. arbitration award is time-barred under 9 U.S.C. § 207.

Section 207 provides:

> Within three years after an arbitral award falling under the Convention is *made*, any party to the arbitration may

apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

(emphasis added).

The parties' dispute with respect to this provision of the Convention centers on the meaning of the word "made." Navimpex contends that as used in § 207 and other sections in the Convention, an application to the court for an order of confirmation must be filed within three years after the award was "made," that is, originally decided by the arbitrators. In this case, Navimpex argues, the award was "made" in November 1984 and therefore Seetransport's action was time-barred because it was filed in March 1988.

■ Seetransport, on the other hand, argues that the term "made" really means "became final." A determination as to when an arbitration award is "made," Seetransport maintains, is subject to French law, pursuant to the arbitration clause in the underlying contract. According to Seetransport, under French law, the award did not become final until Navimpex's appeal was dismissed on March 4, 1986 by the Court of Appeals of Paris. At oral argument, Seetransport asserted that under Navimpex's interpretation, Seetransport would have been put to the task of filing suit in the United States district court to enforce the arbitral award, even though an appeal was pending in the Court of Appeals of Paris that could have vacated the award, and even though Navimpex probably would have moved in the district court for a stay of the judgment pending the determination of the French judicial proceedings.

Nevertheless, it does appear that, by the very terms of the Convention, the course of action described by Seetransport was precisely the one envisioned by the Contracting States. Indeed, § 207 directs an enforcing court to confirm an arbitral award, unless it finds a ground specified in the Convention for refusing or deferring the recognition or enforcement of the award. In that vein, Article VI of the Convention states:

If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon *may, if it considers it proper, adjourn the decision on the enforcement of the award* and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

(emphasis added). Thus, were we to follow the route suggested by Seetransport, and hold that the statute of limitations commences to run when an arbitral award becomes final according to the law that governs the contract that is the subject of the arbitration proceedings, we would be rewriting § 207 to read: "[w]ithin three years after an arbitral award falling under the Convention is made *or becomes final.*" Such a revision would make § 207's deferral provision superfluous.

Moreover, the interpretation of § 207 suggested by Navimpex is entirely consistent with the I.C.C.'s arbitration rules that provide that the "arbitral award shall be final," *see* Article 24, Arbitration Rules of International Chamber of Commerce (1975), and "shall be deemed to be made at the place of the arbitration proceedings and on the date signed by the arbitrator." *See* Article 22, Arbitration Rules of International Chamber of Commerce. Accordingly, we conclude that the judgment granting Seetransport's motion for summary judgment must be reversed and remanded with instructions to dismiss, as time-barred, its cause of action seeking enforcement of the arbitral award pursuant to the Convention.

*IV. Enforceability of the Decision of the Court of Appeals of Paris*

In connection with its other cause of action, Seetransport urges this Court alternatively to recognize and enforce the decision of the Court of Appeals of Paris. Seetransport argues that Navimpex brought an appeal to vacate the arbitration award

entered against it and that the appeal was dismissed. Accordingly, Seetransport contends that the obvious effect is that the arbitration award is enforceable in France.

In the district court, in support of its argument to enforce the decision of the Court of Appeals of Paris, Seetransport submitted the affidavit of Michel Wolfer, French counsel, which stated:

> Under French law, a party to an arbitration can obtain recognition and enforcement of an award in one of two ways. First, is to commence an affirmative proceeding and request recognition from the Court having jurisdiction. The Second (which is specifically relevant here), is under Article 1490 of Title IV and Article 1507 of the French Code of Civil procedure. Under those provisions of the code[,] the decision of the Court of Appeals rejecting the action to set aside the award automatically gives the award recognition and enforceability, or, in French "exequatur". An award having obtained "exequatur" is, without any doubt, under French law, a judgment.

In response to Seetransport's assertions, Navimpex claimed that the Court of Appeals of Paris could only have affirmed, reversed or modified the arbitral award and that only the lower court, The Tribunal of Grand Instances, could grant "exequatur" of arbitral awards and order judgment execution. In support of its position, Navimpex submitted the affidavit of Dominque Bernard–Rabourdin, French counsel, which stated:

> 1.1 ... the recognition and force of an arbitration award is subject to an order of "exequatur" [enforcement] by which a judge orders the enforcement of the arbitration award.
>
> ....
>
> 2.3 ....
>
> ... [T]he arbitration award rendered in the matter is not enforceable at present in France.

In fact, in order to have the award enforced, it would have been necessary for the *exequatur* to be requested in accordance with the provisions of Article 1477 of the New Code of Civil Procedure which provides that: "The arbitration award is subject to compulsory enforcement only by virtue of a decision of *exequatur* coming from the Court of Extended Original Jurisdiction within the district in which the award was rendered. The *exequatur* shall be ordered by the enforcement judge of the court.

According to the Bernard–Rabourdin affidavit, the Court of Extended Original Jurisdiction [2] is entirely distinct from the Court of Appeals of Paris, and, therefore, exequatur could not be obtained by virtue of the ruling of the Court of Appeals of Paris.

As noted in Part I, subject matter jurisdiction existed in the district court pursuant to § 1330(a) of the FSIA because an exception to sovereign immunity was found under § 1605(a)(1). Navimpex, a Romanian agency or instrumentality, had implicitly waived its sovereign immunity because it was a signatory to the Convention and had proceeded to arbitration in the I.C.C. Although the claim for enforcement of the arbitral award has been dismissed as time-barred, we nonetheless conclude that subject matter jurisdiction exists, under § 1330(a), with respect to the alternative cause of action seeking enforcement of the decision of the Court of Appeals of Paris. We note that unlike the recognition of arbitral awards, which is governed by federal law, the recognition of foreign judgments is governed by state law. *See* Restatement (Third) of the Foreign Relations Law of the United States § 481 cmt. a (1987). Though governed by state law as to most substantive aspects, the cause of action to enforce the foreign judgment is within the scope of Navimpex's implicit waiver of sovereign immunity, and this cause of action also

---

**2.** We note the apparent discrepancy between the appellants' assertion that only the "Tribunal of Grand Instances" can grant exequatur, and the assertion made in the Bernard–Rabourdin affidavit, submitted by the appellants, that it is the "Court of Extended Original Jurisdiction" that can grant exequatur.

arises under federal law. *See Verlinden,* 461 U.S. at 491–97, 103 S.Ct. at 1970–73. The cause of action is within the scope of the waiver because the cause of action is so closely related to the claim for enforcement of the arbitral award. The authority of a district court to exercise pendent jurisdiction over such a closely related claim was recognized even before the recently enacted statute, 28 U.S.C. § 1367 (Supp. II 1990), refining a district court's supplemental jurisdiction. *See Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970). Though § 1367 does not apply to the claim to enforce the Paris Court's judgment, since that claim was commenced prior to December 1, 1990, *see* Pub.L. No. 101–650, tit. III, § 310(c), 104 Stat. 5113, 5114, the prior federal law recognized the appropriateness of adjudicating state law claims closely related to federal claims. In this case, it is the FSIA itself, rather than pendent jurisdiction (or § 1367) that provides jurisdiction over the state law claim to enforce the Paris Court's judgment.

 Under the law of the State of New York, a foreign judgment is enforceable if it is "final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." N.Y.Civ.Prac.L. & R. § 5302 (McKinney 1978). Herein, based upon the record before us, it is unclear whether the decision of the Court of Appeals of Paris, as it presently stands, is enforceable in France. Both parties have presented contradictory affidavits of French counsel, which have confused, rather than clarified the issue, and the district court has not addressed the issue. Accordingly, we remand the matter to the district court to allow the parties an opportunity to supplement the record on this issue. *Cf. Polaroid Prod., Inc. v. Lybrand Ross Bros. & Montgomery,* 534 F.2d 1012, 1018 (2d Cir. 1976) ("[E]ven though an appellate court may affirm a judgment of a lower court upon a theory not considered below, we prefer[,] … where such a theory has been briefed and argued only cursorily in this Court, to remand for the district court to consider the issue in the first instance.").

## CONCLUSION

In sum, we reverse the judgment granting Seetransport's motion for summary judgment and remand with instructions to dismiss, as time-barred, Seetransport's cause of action for enforcement of the I.C.C. arbitral award. With respect to the remaining cause of action, on remand, the district court should allow the parties an opportunity to supplement the record on the issue of whether the decision of the Court of Appeals of Paris is enforceable in France and thus should be enforced by the district court.