In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1199 & 99-3424

PUBLICIS COMMUNICATION,

Plaintiff-Counterclaim Defendant-Appellant,

and

PUBLICIS S.A., a French corporation,

Counterclaim Defendant-Appellant,

v.

TRUE NORTH COMMUNICATIONS INC.,

Defendant-Counterclaim Plaintiff-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 8263--Joan B. Gottschall, Judge.

Argued February 14, 2000--Decided March 14, 2000

Before BAUER, FLAUM, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  Arbitration can be an effective way to resolve a dispute in less time, at less expense, and with less rancor than litigating in the courts. Arbitration loses some of its luster, though, when one party refuses to abide by the outcome and the courts are called in after all for enforcement. This is one of those situations.

A joint venture between two advertising companies, Chicago-based True North Communications Inc. and Paris-based Publicis Communication (whose French corporate parent is Publicis S.A.), that had begun in 1989 came apart in May 1997. With one exception that is irrelevant to this case,/1 True North and Publicis agreed to arbitrate any disputes arising from their divorce before the London Court of International Arbitration under the arbitration rules of the United Nations Commission on International Trade Law. Needless to say, disagreements popped up, including whether Publicis had to turn over tax records that True North said it needed to file with the Internal

Revenue Service and the Securities and Exchange Commission.

Danish attorney Allan Philip, French law professor Alain Viandier, and former U.S. Attorney General Nicholas Katzenbach were appointed to handle the arbitration, with Philip serving as chairman of the tribunal. In an October 30, 1998, "order" signed by Philip "for and on behalf of the Arbitrators," the tribunal told Publicis to provide True North with the tax information for 1994 to 1996 by November 23, 1998. When Publicis failed to comply, True North went to the Northern District of Illinois to try to confirm the arbitration decision, the first step toward federal court enforcement of an arbitration ruling. Judge Joan Gottschall confirmed the arbitration ruling and later rejected Publicis' Rule 60(b) motion to revisit her decision.

We are tempted to throw out this case as moot. True North has received from Publicis all the tax records it wanted,/2 a fact neither side bothered to disclose to us until prompted by our questions during the oral argument. As the parties might be aware, deciding live disputes keeps us busy enough and we feel no need to moonlight by rendering advisory opinions. Publicis insists, however, that although True North now says it is satisfied, the case is not moot because Publicis still has not turned over all of the records literally called for by the tribunal's broad order and thus still is not in full compliance with Judge Gottschall's ruling. Given the history of bickering between these litigants and the possibility they might find a way to return to court another day if we brand their current squabble moot, deciding this case on the merits seems prudent.

In reviewing the district court's confirmation of the arbitration decision, we review findings of fact for clear error and decide questions of law de novo. Geneva Sec., Inc. v. Johnson, 138 F.3d 688, 691 (7th Cir. 1998).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the New York Convention and incorporated into American law at 9 U.S.C. sec. 201 et seq., governs judicial confirmation of arbitration decisions like this that arise out of agreements between a U.S. citizen (True North) and a citizen of a foreign nation such as France that signed the convention (Publicis). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. sec. 207. Article V(1)(e)

of the convention specifies several exceptions to judicial enforcement, including awards that have not yet become binding on the parties.

Publicis says the tribunal's decision was an interim order and, under the convention, only arbitral "awards" are final and subject to confirmation. Publicis insists that until the order was final, True North was confined to seeking relief from the tribunal itself or the courts of England, the site of the arbitration. True North says the convention allows judicial confirmation of final rulings, whether they are termed "awards" or "orders," and insists that the tribunal's October 30 opinion was final. Although Publicis suggests that our ruling will cause the international arbitration earth to quake and mountains to crumble, resolving this case actually requires determining only whether or not this particular order by this particular arbitration tribunal regarding these particular tax records was final. If the arbitration tribunal's October 30, 1998, decision was final, then Judge Gottschall had the authority to confirm it. If the arbitrators' decision was not final, then the district court jumped the gun.

Publicis places great importance on the difference between an award and an order. True North requested an "award" from the arbitration tribunal on the tax records issue, but the tribunal called its decision an "order." The arbitration rules the parties agreed upon refer to final decisions as "awards." UNCITRAL Arbitration Rules, Articles 31-37 (1977). The law governing judicial enforcement of arbitral decisions is called the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral "Awards." 9 U.S.C. sec. 201. The convention speaks only of recognizing and enforcing an arbitral "award"; it does not refer to an arbitral order or any other comparable term. Commentators describe "awards" as final and enforceable. See Alan Redfern & Martin Hunter, Law and Practice of International Commercial Arbitration 360, (1991); Mauro Rubino-Sammartano, International Arbitration Law 410 (1989); Douglas D. Reichert, Provisional Remedies in the Context of International Commercial Arbitration, 3 Int'l Tax & Bus. Lawyer 368, 395 (1986).

Publicis' position is that an arbitral ruling can be final in every respect, but unless the document bears the word "award" it is not final and is unenforceable. This is extreme and untenable formalism. The New York Convention, the United Nations arbitration rules, and the commentators' consistent use of the label "award" when discussing final arbitral decisions does not bestow transcendental significance on the term.

Their treatment of "award" as interchangeable with final does not necessarily mean that synonyms such as decision, opinion, order, or ruling could not also be final. The content of a decision-- not its nomenclature--determines finality.

The Federal Arbitration Act also uses "award" in conjunction with finality, 9 U.S.C. sec.sec. 9 and 10, but this circuit and others have found arbitration decisions lacking the "award" tag to be final. In Yasuda Fire & Marine Insurance Company of Europe v. Continental Casualty Company, 37 F.3d 345 (7th Cir. 1994), we considered whether "an interim order of security" constituted a final award and thus was subject to being judicially vacated under 9 U.S.C. sec. 10(a)(4). Because the order was necessary to prevent the final award from becoming meaningless, we decided that the order was final and thus could be immediately challenged. 37 F.3d at 347-48. Other decisions cited in Yasuda reach similar results. See Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022-23 (9th Cir. 1991) (arbitral "interim final order" providing temporary equitable relief necessary to make potential final award meaningful found to be final and subject to confirmation); Island Creek Coal Sales Co. v. City of Gainesville, 729 F.2d 1046, 1049 (6th Cir. 1984) (arbitral "interim order" that finally and definitively disposed of separate, discrete, self-contained issue found to be final and subject to confirmation); Sperry Int'l Trade v. Israel, 689 F.2d 301, 304 n.3 (2d Cir. 1982) (appeals court itself did not consider, but noted that district court found arbitral "award" that was final as to severable issues was final and subject to confirmation).

These cases show that although the Federal Arbitration Act uses the word award in conjunction with finality, courts go beyond a document's heading and delve into its substance and impact to determine whether the decision is final. Publicis and True North's arbitration is controlled by the New York Convention, not the Federal Arbitration Act. But the New York Convention supplements the Federal Arbitration Act, and the logic of decisions applied to the latter may guide the interpretation of the former.

As to whether Publicis had to turn over to True North tax records from 1994 to 1996, the arbitration tribunal's October 30 order appears final. The tribunal summarized True North's position that its claim "is extremely urgent" and Publicis' contention that "no urgency exists and that the matter . . . may be decided . . .

together with the other claims." The tribunal concluded that True North's claim "is well founded," said that interim measures were necessary, and directed Publicis to provide the 1994-1996 tax records to True North by November 23, 1998. Publicis argues that the deadline does not make this decision any more final and immediately enforceable than a discovery order setting a specific date for compliance. This analogy is inapt. Discovery involves compiling information needed to reach a resolution; it is an early step in moving toward the end result. In the situation at hand, whether or not Publicis had to turn over the tax records is the whole ball of wax. The tribunal's order resolved the dispute, or was supposed to, at any rate. Producing the documents wasn't just some procedural matter--it was the very issue True North wanted arbitrated. The finality of the tribunal's ruling is demonstrated by the deadline. The tribunal explicitly carved out the tax records issue for immediate action from the bulk of the matters still pending, stating that "[t]he delivery of the documents should not await final confirmation in the Final Award." Requiring the unrelated issues to be arbitrated to finality before allowing True North to enforce a decision the tribunal called urgent would defeat the purpose of the tribunal's order. A ruling on a discrete, time-sensitive issue may be final and ripe for confirmation even though other claims remain to be addressed by arbitrators.

Like its formalistic argument over the difference between an award and an order, Publicis fusses that the tribunal's October 30 decision cannot be final because it was signed only by Philip. Under the United Nations arbitration rules, final awards are supposed to be signed by all three arbitrators and, if not, should explain any missing signature. UNCITRAL Arbitration Rules, Article 32(4). This argument goes nowhere. In the first place, the tribunal chairman Philip signed the decision "for and on behalf" of the other arbitrators. At Judge Gottschall's prompting, arbitrators Viandier and Katzenbach later signed off on the decision as well.

A closely related argument gives us greater pause. The boilerplate United Nations rules allow the presiding arbitrator to decide procedural matters on his own. UNCITRAL Arbitration Rules, Article 31(2). The ground rules for this arbitration made an exception: "The arbitrators will consult on any procedural decision to be made or any procedural directions to be given. They may be signed by the Chairman alone." Publicis says the "for and on behalf" language of the October 30 order indicates that this was a

procedural decision on which Philip consulted the others but which did not require Viandier's and Katzenbach's signatures. True North says that because the ground rules allow procedural decisions to be signed by the chairman only, the "for and on behalf" clause would be superfluous if this decision were procedural, and therefore the language signifies that this was a substantive holding. Either interpretation seems credible, which only confirms our belief that finality should be judged by substance and effect, not by superficial technicalities.

At the very least, Publicis says the arbitration award was ambiguous and that instead of confirming it Judge Gottschall should have remanded it to the tribunal for clarification. In the context of the Federal Arbitration Act, "[a] district court should not interpret an ambiguous arbitration award. If an award is unclear, the court should send it back to the arbitrator for clarification. When possible, however, a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." Teamsters Local No. 579 v. B & M Transit, Inc., 882 F.2d 274, 278 (7th Cir. 1989) (citations omitted). Again using Federal Arbitration Act case law as a guide, we think Judge Gottschall legitimately found the arbitrator's decision unambiguous. Sending the matter back to the tribunal would have defeated the swift resolution that True North sought and that the arbitrators thought was justified.

Publicis also appeals Judge Gottschall's denial of its Federal Rule of Civil Procedure 60(b)(2) motion to reverse her ruling because of newly discovered evidence that by due diligence could not previously have been discovered. We review the denial of such a motion for abuse of discretion. Jones v. Lincoln Elec. Co., 188 F.3d 709, 735 (7th Cir. 1999). During her initial oral ruling Judge Gottschall remarked that the arbitration "panel has not--appears not to have consulted the rules to do this . . . . It's simply that they haven't done everything they could do to make it totally incontrovertible under the rules what they were intending." Publicis' "newly discovered evidence" consists of statements made by the arbitrators during a subsequent February 1999 hearing that Publicis contends demonstrate that the distinguished tribunal did know what it was doing, had consulted the rules, and believed that the term "award" should be reserved for final decisions. A party needs awfully good stuff to win a Rule 60(b)(2) motion. A few isolated comments culled from over 500 pages of transcript from the February 1999 hearing that might contradict an off-the-cuff remark by the district court does

not suffice. Judge Gottschall's rumination about the arbitrators not knowing the rules might well have been mistaken, but it was a stray comment made during a ruling from the bench and was not the basis for her decision. Rather, Judge Gottschall's conclusion that the tribunal's October 30 order was final was grounded on the decision's substantive intent to create immediate action.

If the tribunal's decision wasn't final, if the tribunal didn't really intend to finalize it until eons later, if True North had to wait to enforce this urgent matter until all the other issues were arbitrated to finality, then the October 30 decision was a meaningless waste of time. Despite some possible superficial technical flaws, and despite its designation as an "order" instead of an "award," the arbitration tribunal's decision--as to this chunk of the case--was final. And this is our final judgment.

AFFIRMED.

/1 That exception was the issue in an earlier decision, Publicis Communication v. True North Communications Inc., 132 F.3d 363 (7th Cir. 1997).

/2 True North's counsel said during oral argument: "All of the records that we need for the tax purposes for the '94 through '96 tax years have been turned over and they were turned over within the last 2 weeks . . . . We have got what we wanted. The order did serve its purpose . . . . In my judgment, your honor, nothing remains because we have received the relief . . . that the tribunal ordered and that Judge Gottschall enforced."