# United States Court of Appeals
## For the First Circuit

No. 16-1397

THE UNIVERSITY OF NOTRE DAME (USA) IN ENGLAND,

Plaintiff, Appellee,

v.

TJAC WATERLOO, LLC; ZVI CONSTRUCTION CO., LLC,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,[*]
and Baldock, Circuit Judge.[**]

John W. DiNicola, II, with whom DiNicola, Seligson & Upton, LLP was on brief, for appellant TJAC Waterloo, LLC.
Richard Briansky, with whom Amy B. Hackett and McCarter & English, LLP were on brief, for appellant ZVI Construction Co., LLC.
John A. Tarantino, with whom Nicole J. Benjamin, Adler Pollock & Sheehan P.C., Michael J. McMahon, and Cooley LLP were on brief, for appellee.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

[**] Hon. Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

June 28, 2017

SOUTER, **Associate Justice**.  This is an appeal from the district court's judicial recognition of an English arbitrator's determination of joint contract liability against the seller and the renovator of a building.  As the parties had agreed, the assessment of damages for the items of breach was postponed to a subsequent stage of arbitration.  Owing to that agreement to bifurcate litigation of the liability and damages issues, the district court treated the arbitrator's liability judgment as final and thus entitled to judicial recognition, and it specifically held the contractor for the renovation work bound as a party to the agreement providing for arbitration of disputes.  In this review of the district court's determinations of finality and party-status we affirm.

## I.

The University of Notre Dame (USA) in England agreed to buy an English building from TJAC Waterloo, LLC, for $58,833,700, once the structure had been renovated and converted into a student dormitory by TJAC's associated corporation, ZVI Construction Co., LLC.  The purchase and sale agreement between Notre Dame and TJAC addressed both the conveyance and the reconstruction to be performed by ZVI, there referred to as the contractor, which also executed the P&S Agreement by the same agent who signed for TJAC.  So far as it concerns us here, the P&S Agreement provided that in case the parties could not

- 3 -

resolve any dispute that might arise (except over the meaning and construction of the agreement itself), either buyer or seller could refer the disagreement for adjudication by an "expert," who in American usage would be called an arbitrator. Despite a rosy projection of satisfaction by Notre Dame's own consultant after the work was finished, Notre Dame subsequently identified a number of inadequacies claimed to add up to $8,500,000 in necessary remedial work.

Since the parties could not resolve their differences, at Notre Dame's behest the breach of contract claims were submitted to an arbitrator as provided in the P&S Agreement, subject to a further agreement by the three parties to the P&S Agreement to try the liability elements of the breach claims first and separately litigate the issues of "quantum" or damages for any items of breach the arbitrator might find at the liability stage. The three parties proceeded to try the liability claims, and in due course the arbitrator circulated a report of his preliminary conclusions, which he invited the parties to comment upon. After considering the responses, he issued a "determination," or judgment, that TJAC and ZVI were jointly liable to Notre Dame, based on findings of substantial shortcomings in the required renovation.

After Notre Dame circulated its opening submission in the subsequent damages phase, TJAC and ZVI asked for a

postponement of litigation due to the ill health of someone involved on their side. This led Notre Dame to ask for a showing that the two corporations would be in a position to satisfy the award of damages that the arbitrator would at some point decree. The liable parties were not reassuring and refused to confirm that the liability insurance required by the P&S Agreement remained in effect. Notre Dame responded by filing suit in a Massachusetts state court for an order enjoining TJAC and ZVI from dissipating, encumbering, or transferring assets that might be needed for payment of any judgment for damages. After TJAC and ZVI removed the case to the federal district court under the statute implementing the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (ratified by the United States on Sept. 30, 1970), see 9 U.S.C. § 205, Notre Dame supplemented its claim for judgment security by requesting judicial confirmation of the arbitrator's determination on liability, for which the Convention made provision, see 9 U.S.C. § 207; Convention arts. III, V.

The district court granted confirmation under the terms of the Convention and authorized attachment of property in the amount of just over $7 million as security for the anticipated award of damages. Univ. of Notre Dame (USA) in Eng.

- 5 -

v. TJAC Waterloo, LLC, No. 16-cv-10150-ADB, 2016 WL 1384777 (D. Mass. Apr. 17, 2016). In this ensuing appeal, TJAC and ZVI claim that the arbitrator's judgment of liability in the bifurcated arbitration proceeding lacks the finality required for judicial confirmation of a foreign arbitral award under 9 U.S.C. § 207. And ZVI claims that in any event it is not subject to that judgment because the P&S Agreement's arbitration clause was a submission to arbitration by Notre Dame and TJAC only.

## II.

The issue of the eligibility of the arbitrator's liability decree for judicial confirmation under the terms of the Convention encompasses both legal and factual components: the rule stating the necessary condition for judicial cognizance and the sufficiency of the record to show that the standard is satisfied by the arbitrator's liability judgment at this point in the present case. So far as relevant here, the parties address the legal standard at two levels of specificity, and at the more general of the two, they have no apparent disagreement. Although judicial construction of the Federal Arbitration Act has produced the requirement for judicial recognition that a decree be "final," see El Mundo Broad. Corp. v. United Steelworkers of Am., AFL-CIO CLC, 116 F.3d 7, 9 (1st Cir. 1997), and the Convention textually requires that it be "binding," see

- 6 -

Convention art. V(1)(e), both parties treat these as conceptually indistinguishable standards. In so assuming, they are in harmony with cases from outside this circuit that have addressed the Convention standard for judicial confirmation with the domestic law vocabulary. See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1100 (9th Cir. 2011) ("Th[e not-binding] defense [in the Convention's Article V(1)(e)] may be invoked when an action to confirm or enforce an arbitration award is filed before the award has become final."); Ecopetrol S.A. v. Offshore Expl. & Prod. LLC, 46 F. Supp. 3d 327, 336 (S.D.N.Y. 2014) (referring interchangeably to the Convention's condition that an award must be "binding" and a requirement that the award be "final"); Daum Glob. Holdings Corp. v. Ybrant Digital Ltd., No. 13 Civ. 03135 (AJN), 2014 WL 896716, at *2 (S.D.N.Y. Feb. 20, 2014) (citing as an "example" of a foreign award that "is not binding on the parties" one "that is interim, not final" (internal quotation marks omitted)). We see no reason to doubt the parties' common understanding at this general level and accordingly scrutinize the foreign determination now before us by the familiar finality standard that "[n]ormally, an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration." Hart Surgical, Inc.

- 7 -

v. <u>Ultracision, Inc.</u>, 244 F.3d 231, 233 (1st Cir. 2001) (quoting <u>Fradella</u> v. <u>Petricca</u>, 183 F.3d 17, 19 (1st Cir. 1999)).

The parties' harmony falters, however, when they confront the need for a more specific corollary governing the eligibility for confirmation of an arbitrator's decree determining only one issue within a controversy that the parties have agreed to bifurcate for separate arbitral proceedings. The Appellants cite the Convention's provision for confirmation and its "binding" requirement. Notre Dame, to the contrary, relies on the rule in this circuit governing a bifurcated domestic arbitration, which can be stated shortly. <u>Hart Surgical</u> holds that a bifurcated liability judgment may qualify as final when the arbitrating parties have formally agreed to litigate liability and damages in separate, independent stages. <u>Id.</u> at 235-36. <u>Providence Journal Co.</u> v. <u>Providence Newspaper Guild</u>, 271 F.3d 16 (1st Cir. 2001), takes the further step of holding that an informal agreement to that effect will suffice. <u>Id.</u> at 19-20. These cases, in turn, are supported by the Supreme Court's position that the Federal Arbitration Act "lets parties tailor some, even many, features of arbitration by contract, including . . . procedure." <u>Hall Street Assocs., L.L.C.</u> v. <u>Mattel, Inc.</u>, 552 U.S. 576, 586 (2008) (internal citation

omitted).[1]  The domestic law would, then, support the district court's confirmation of the liability determination, there being no question that the parties here did informally agree to arbitrate liability separately before reconvening in a separate stage of the proceeding to address "quantum," that is, damages.[2]

The only remaining question about the legal standard is whether there is any reason against following the domestic rule in construing the generally identical Convention requirement, and we see none.  No Convention case has been brought to our attention addressing the significance of bifurcation in addressing finality, and ZVI has given us no reason to think that the rationale for Hart Surgical and Providence Journal is any less apropos in applying the Convention than in reading the domestic statute.  On the contrary, we agree with the view of the Seventh Circuit as

_____

[1]  We reject Appellants' argument that Hall Street effectively overruled Hart Surgical and Providence Journal.  The Supreme Court held in Hall Street that parties may not contractually expand the bases for vacatur or modification of an arbitrator's decision, as set out in the Federal Arbitration Act.  Hall Street, 552 U.S. at 578.  It did not hold that the Act's finality requirement precludes the judicial recognition of a liability award prior to assessment of damages when the parties have agreed to bifurcate arbitration of two issues into separate proceedings.  In fact, Hall Street, as noted, recognized the Act's compatibility with contractual tailoring of procedures.  Id. at 586.

[2]  Indeed, counsel for TJAC and ZVI informed the expert during the arbitration proceeding that her clients were "in agreement with" the bifurcation of the proceeding "into two stages," liability and damages, and the expert later acknowledged that TJAC and ZVI "have agreed" to bifurcation.

stated in Publicis Communication v. True North Communications, Inc., 206 F.3d 725 (7th Cir. 2000), that the "Convention supplements the Federal Arbitration Act, and the logic of decisions applied to the latter may guide the interpretation of the former." Id. at 729. We thus follow the lead of our own Hart Surgical case, which cited the Publicis discussion in generally addressing finality under the domestic statute, thereby suggesting that the concern is comparable in each of the legal regimes. See Hart Surgical, 244 F.3d at 233-34. In sum, we hold that a final determination of liability but not damages can satisfy the finality requirement of Article V(1)(e) of the Convention when, as here, the parties have agreed to submit the issue of liability to the arbitrator for a distinct determination prior to a separate proceeding to assess damages.[3]

That leads to the factual issue, whether the arbitrator's liability judgment was final in this instance. TJAC and ZVI argue that it was not, based on the following provision in the award:

> None of the answers are the final answers. All and any may now be commented upon in any way seen fit.

---

[3] There is no merit to Appellants' suggestion that the bifurcation agreement was inadequate for purposes of judicial authority to confirm, which would require express agreement authorizing judicial review after the liability phase but before the damages litigation. Neither Hart Surgical nor Providence Journal hints at such a requirement.

- 10 -

The argument, though, is grasping for a straw that the record shows is not there to be grasped. The same language occurred in the first, clearly tentative, draft of proposed findings and judgment, which bears the title, "A Document of Preliminary Indications on Liability for Comment in Reply by the Parties." That tentative draft proceeded to expand on its title:

> The Issues are rehearsed below. They are not the final Decisions on Liability. The parties may now make a final comment. Thereupon liability will be determined and published.

The parties did in fact comment upon the draft,[4] which was then superseded by the determination at issue here. In place of the preliminary language of the draft circulated for comment, the judgment subsequently issued begins with the descriptor, "An Expert Determination on Liability." The arbitrator emphasized the finality of the liability determination even further some eight months later in rejecting ZVI's belated claim to be exempt from the arbitrator's jurisdiction, as discussed below: "Liability was decided via the 81-page Award . . . . The binding Decision . . . cannot be changed." Given the legitimacy of requesting bifurcation in foreign as well as domestic arbitral determinations, there is no reason against accepting the finality of the liability award as the arbitrator understood it:

---

[4] Notre Dame, in its brief, states that "the parties," plural, submitted comments. The record before us shows comments by TJAC and ZVI.

- 11 -

the usual rule that "[n]ormally, an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration." Fradella, 183 F.3d at 19.[5]  Given Hart Surgical's rule recognizing finality in reviewing one issue of a bifurcated arbitration, an arbitrator's understanding of finality on a bifurcated component should likewise be respected.  For that matter, the manifest understanding of the parties was the same. See Providence Journal, 271 F.3d at 19.  None of them responded with a note of disagreement with the arbitrator's description of his conclusions as "binding," or with the judgment heading of "Determination" in place of "Preliminary Indications," thus indicating that the liability litigation was over.  The disagreement came only after Notre Dame went to court seeking security for anticipated damages.

In sum, our de novo review, see Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006), shows that the district court was surely correct in finding that the two

_____

[5] Appellants argue that this is not a normal case because the arbitrator noted that several items of liability would require further evidence at the damages stage to determine the right approach to curing the defects.  But these observations are entirely consistent with the finality of the liability determinations.  In a garden-variety fender-bender case, a dispute over the relative economy of installing a new fender or hammering out the dent in the old one is separable from and independent of the question of the defendant's liability for causing the dent.

- 12 -

sentences TJAC and ZVI rely on are nothing more than mistaken leftovers from the earlier document, and there was no error in its conclusion that the "binding" liability judgment qualified as final and was thus a candidate for confirmation. Since the objecting parties present no argument that the award should be amended or vacated, we hold that federal jurisdiction was properly exercised in confirming it as written.

### III.

ZVI alone raises the remaining issue here, in its claim that it could not be subjected to arbitration because it never agreed to arbitrate as a party to the P&S Agreement's arbitration clause. The evidence, however, adds up convincingly to defeat the claim. The P&S Agreement referred to ZVI as one of three parties, along with TJAC and Notre Dame. The subject matter of the arbitration clause was described as "any dispute arising between the parties hereto as to their respective rights[,] duties and obligations hereunder or as to any matter arising out of or in connection with the subject matter of this agreement (other than any with regard to the meaning or construction of this agreement)." ZVI executed the agreement with this comprehensive language, by the signature of a corporate officer who also signed for the related corporation, TJAC.

- 13 -

When the disputes over adequate performance evaded settlement by agreement, ZVI acted in accord with a straightforward reading of what it had signed. It made no statement in the record that it would take part in the arbitration merely as a witness or source of evidence, and its actions bespoke an understanding that it was bound to arbitrate. ZVI agreed with TJAC and Notre Dame in the selection of the particular arbitrator who heard the case,[6] and when the proceeding began, ZVI participated without any objection for the record or caveat that it had not agreed to arbitrate. It asserted no such claim in response to the preliminary draft concluding that it was liable jointly with TJAC for contractual failures. Nor did it so protest when the arbitrator's final liability judgment was issued against it, or at any time thereafter before Notre Dame brought this action to assure actual payment of anticipated damages and sought confirmation of the arbitral determination of liability. In sum, ZVI's actions confirm what the language of the P&S Agreement provides in so many words, that ZVI along with the other signatories and the arbitrator understood that it was a party whose obligations were subject to the arbitration. ZVI's conduct thus provides the conclusive premise for applying the rule that a party who does

---

[6] Notre Dame represents in its brief that the three parties agreed to the appointment of the expert. Appellants do not dispute this characterization.

"not reserve [an] issue" or contest the arbitrator's authority to decide it, but rather submits the issue to arbitration, "cannot complain that the arbitrator[] reached it." See JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, 324 F.3d 42, 49 (1st Cir. 2003).

ZVI's late attempts to counter the contract terms and its own behavior as signatory and participant are unavailing. First, it characterizes itself as a merely "nominal" party to the P&S Agreement, claiming that its sole obligation under the terms of the document was to employ a named individual to oversee the work to be done. Although descriptions of that work were set out in Schedule 1 of the agreement, ZVI emphasizes that the terms provided merely that ZVI's services as contractor would be "procure[d]" from it by TJAC, as was done through a separate Building Contract between it and TJAC, the point being that ZVI had no direct obligation under the P&S Agreement to perform the renovation.

But this argument fails to immunize ZVI from its apparent agreement to arbitrate over the adequacy of its performance, for two independent reasons. Simply as a textual matter, the "nominal party" contention ignores the description of arbitral subjects contained in the arbitration clause covering disputes "between the parties." As quoted above, those subjects included not only any dispute over performance of the

particular obligations under the P&S Agreement, but also those "as to any matter arising out of or in connection with the subject matter of [the P&S Agreement]." Given ZVI's identification in the P&S Agreement as "Contractor," it makes sense to read this reference to a "matter arising" as covering those that would involve ZVI as contractor under the separate agreement it made with TJAC to do the modification work on the building. Moreover, the "arising out of or in connection with" language is reasonably read to cover that very work, as it was also addressed in a separate Duty of Care Agreement between ZVI and Notre Dame. There, ZVI agreed to undertake a "Project [that] will when completed satisfy any performance specification or requirement included or referred to in the Building Contract" between ZVI and TJAC. ZVI has given us no reason to doubt that this language refers to the actual work whose demerits were the subject of the arbitration in issue.

It is true that this is not the analysis given by the arbitrator, but it is not the only analysis that supports the district court's confirmation decree. Another possibility is to refer again to Schedule 1 of the P&S Agreement listing items of renovation work that the "Contractor" is to perform, once having been "procure[d]" to do so by the Seller. While reading this list as imposing a direct obligation on ZVI to renovate accordingly may not be the better reading of the agreement, the

- 16 -

arbitrator's conclusion that ZVI was obliged to perform accordingly is entitled to judicial confirmation under the rule of limited review, that courts will defer to arbitration awards "as long as the arbitrators are 'even arguably construing or applying the contract and acting within the scope of [their] authority.'" Cytyc Corp., 439 F.3d at 32 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

ZVI's second attempt to escape its facial agreement to submit to arbitration relies on the provisions of the arbitration clause that give the "Buyer" (Notre Dame) and "Seller" (TJAC) the rights to call for arbitration and have their "written submissions" considered, with no parallel provision for the benefit of the "Contractor" (ZVI). From this, ZVI would have us infer that the clause must be an agreement between Buyer and Seller only. The plausibility of this reasoning, however, is undercut by a further look at the clause's text. Although the Buyer and Seller are given the power to call for arbitration, the subject matter of that arbitration is described as any dispute between the "parties," without limiting parties to the Buyer and Seller. While the language giving the power to invoke arbitration to only two of the three parties subject to it presumably carries some significance, the limitation can make sense on the assumption

that the two closely related companies, TJAC and ZVI, chose to speak with one voice before making any call for arbitration, with TJAC having the ultimate discretion.

ZVI proposes a different rationale for the absence of a power on its part to initiate arbitration, which it finds in its Duty of Care Agreement with Notre Dame, and particularly in the provision that the contract "is subject to English law and the jurisdiction of the English courts." From this ZVI would have us understand that the arbitration clause may sensibly be read as an agreement between Buyer and Seller only, because by the terms of this Duty of Care Agreement any dispute that might arise between ZVI and Notre Dame could only be litigated in a judicial forum. There is more than one answer to this argument, but it suffices to note that, once again, its force depends on ignoring a provision from the same contract ZVI relies on. The Duty of Care Agreement also provides that it "shall in no way prejudice or affect any other rights or remedies of [Notre Dame] against [ZVI] whether at common law or otherwise in respect of the Project or other matters referred to herein." Whatever power Notre Dame had to require arbitration is thus unaffected by the Duty of Care Agreement, and the most that can be said about the judicial forum selection clause may be that it gives ZVI a forum to litigate against Notre Dame on an issue that neither Notre Dame nor TJAC is willing to subject to arbitration

under the terms of the P&S Agreement, or on an issue of contract meaning that the P&S Agreement exempts from arbitration.

In any event, because the terms of the Duty of Care Agreement (like those of the P&S Agreement itself) provide that it is "subject to English law" in the English courts, we note the judgment of the Technology and Construction Court, a subdivision of the Queen's Bench Division of the High Court of Justice, where ZVI filed an action attempting (as it does here) to disencumber itself of the liability determined by the arbitrator. We take judicial notice of the ensuing judgment as an authoritative statement under English law of the arbitrator's jurisdiction over ZVI. That court did not attempt to parse the relationship of the terms of the two agreements on the jurisdictional question here, but instead relied on ZVI's active and unconditional participation in the arbitration. See ZVI Const. Co. v. Univ. of Notre Dame (USA) in Eng. [2016] EWHC (TCC) 1924 ¶ 52 (Eng.). This was the English court's premise for concluding that ZVI "impliedly agreed" to the arbitral jurisdiction and is "estopped" from claiming otherwise. Id. ¶¶ 52, 64. Thus, the court applying English law reached a result that confirms the arbitrator's authority, by a line of reasoning comparable to this court's own rule, mentioned above, that where a party submits an issue to arbitration, it "cannot complain that the arbitrator[] reached it." JCI Commc'ns, 324 F.3d at

That basis for judgment supports the result that is, of course, entirely consistent with what we set out earlier as the better reading of the contract documents.

## IV.

The district court's judgment confirming the expert's liability award is **affirmed**.