# United States Court of Appeals
## For the First Circuit

No. 21-1558

THE UNIVERSITY OF NOTRE DAME (USA) IN ENGLAND,

Plaintiff, Appellee,

v.

TJAC WATERLOO, LLC; ZVI CONSTRUCTION CO., LLC,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Gelpí, Circuit Judges.

Richard E. Briansky, with whom Amy B. Hackett and Peckar & Abramson, P.C. were on brief, for appellants.
John A. Tarantino, with whom Nicole J. Benjamin and Adler Pollock & Sheehan, P.C. were on brief, for appellee.

September 13, 2022

**GELPÍ, Circuit Judge.** This is an appeal from the district court's confirmation of a foreign arbitral tribunal's assessment of damages in a contractual dispute relating to construction defects. The underlying arbitration concerns joint liability claims made by appellee The University of Notre Dame (USA) in England ("Notre Dame") against appellants TJAC Waterloo, LLC ("TJAC") and ZVI Construction Co., LLC ("ZVI"), respectively the seller and renovator of a dormitory that Notre Dame had agreed to purchase. In a previous decision, we affirmed the district court's confirmation of the arbitrator's liability judgment against TJAC and ZVI. See Univ. of Notre Dame (USA) in Eng. v. TJAC Waterloo, LLC (Notre Dame I), 861 F.3d 287, 296 (1st Cir. 2017). Now, TJAC and ZVI challenge the district court's confirmation of certain damages awarded to Notre Dame, arguing that Notre Dame's petition for judicial confirmation of these awards is time-barred. Because appellants' contentions in this building-defect dispute rest on shaky foundations, we affirm.

## I.     Background[1]

Upon purchasing from TJAC the building that ZVI had renovated, Notre Dame became aware of numerous defects. The ensuing dispute was submitted to arbitration, and the parties agreed to bifurcate the proceedings, first trying the liability elements of Notre Dame's breach-of-contract claim, and subsequently litigating issues of "quantum" (i.e., damages) for any breach found during the liability phase. Id. at 290.

In Notre Dame I, we addressed the finality of the arbitrator's judgment of joint liability against TJAC and ZVI following the conclusion of the first phase of the arbitration. 861 F.3d at 289. TJAC and ZVI argued that the district court erred in confirming the arbitrator's liability award because that judgment -- only pertaining to the first stage of the bifurcated proceedings -- lacked the requisite finality for judicial confirmation under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention").[2]

---

[1]     As this is the second time a dispute relating to the underlying arbitration has made its way to this court, see Notre Dame I, 861 F.3d at 287, we assume the reader's familiarity with our earlier opinion, and rehearse here only the facts and travel necessary to contextualize the instant appeal.

[2]     The New York Convention is implemented in domestic law by chapter two of the Federal Arbitration Act ("FAA"). See 9 U.S.C. §§ 201-08.

- 3 -

Notre Dame I, 861 F.3d at 291.  We disagreed, holding that the same standard of finality applicable under domestic law applies to proceedings pursuant to the New York Convention and reiterating our previous determination that "a bifurcated liability judgment may qualify as final when the arbitrating parties have formally agreed to litigate liability and damages in separate, independent stages."  Id. at 291-92 (citing Hart Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 235-36 (1st Cir. 2001)).  On de novo review, see Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006), we affirmed the district court's finding that the arbitrator's liability judgment was indeed final and thus susceptible to judicial confirmation.  Notre Dame I, 861 F.3d at 293.

While the parties litigated judicial confirmation of the liability awards (issued by the arbitrator as Awards No. 1 and No. 2), the arbitration continued to the quantum phase of the proceedings.  Between 2016 and 2020, the arbitrator issued a series of damages awards concerning various costs that stemmed from the breach established at the liability stage:

- Award No. 3 ("An Expert Determination on Quantum") -- Dated September 20, 2016; regarding the preliminary "Cost of Works" to remediate the deficiencies in the building under contract; no amount was awarded.

- 4 -

- Award No. 4 ("An Expert Determination on Quantum") -- Dated April 11, 2017; regarding the final cost of works; the amount awarded was £1,781,048.44.

- Award No. 5 ("Decisions") -- Dated July 27, 2017; regarding certain additional and ancillary costs of work items not covered by Award No. 4; the amount awarded was £957,450.00.

- Award No. 6 ("Expert Determination Award No. 6 (Amended)") -- Dated December 5, 2018; regarding interest due on Awards No. 4 and 5; the amount awarded was £328,001.37 + £269.52 per day (beginning on November 30, 2018).

- Award No. 7 ("Expert Determination Award No. 7 -- Decisions as to VAT") -- Dated March 31, 2020; concerning costs relating to the value-added tax (VAT) previously paid by Notre Dame as well as remaining outstanding items (e.g., expert fees and interest); the amount awarded was £547,699.00 + £5,040.00 + £65,723.00 (interest through August 1, 2018) + £60.02 per day (beginning on August 2, 2018).

On May 15, 2020, Notre Dame moved for the district court to confirm these awards and enter summary judgment in its favor. TJAC and ZVI opposed the motion, arguing that Award No. 4 was, for purposes of judicial confirmation, final upon issuance and that Notre Dame's request for confirmation of Award No. 4 was thus time-barred. Because the FAA provides that a party to an arbitration may apply for judicial confirmation "[w]ithin three years after an

- 5 -

arbitral award falling under the [New York] Convention is made," see 9 U.S.C. § 207, and Award No. 4 was issued on April 11, 2017, TJAC and ZVI posited that the statute of limitations for confirmation of the award expired on April 11, 2020.  Similarly, TJAC and ZVI argued that Award No. 6 was partially ineligible for judicial confirmation insofar as it granted interest on the (putatively unconfirmable) Award No. 4.

The district court disagreed, holding that Award No. 4 was not a final award eligible for judicial confirmation upon issuance.  Instead, the court held that the three-year statute of limitations for judicial confirmation only began to run upon the issuance of Award No. 7 on March 31, 2020, as it was only at this time that the arbitrator had "issued a decision as to all th[e] sub-categories" of awards, and therefore arrived at a "final comprehensive damages determination" that "definitively and comprehensively settl[ed] the parties' dispute regarding damages." Univ. of Notre Dame (USA) in Eng. v. TJAC Waterloo, LLC (Notre Dame II), No. 16-CV-10150, 2021 WL 2827442, at *3 (D. Mass. July 7, 2021).  Accordingly, the court granted Notre Dame's request for judicial confirmation.[3]  Id. at *5.  TJAC and ZVI timely appealed.

---

[3]     TJAC and ZVI also contested the confirmability of Award No. 7 on the ground that it ran afoul of the "revenue rule," which constrains judicial enforcement of recognition of foreign revenue rules.  The district court rejected this argument, Notre Dame II, 2021 WL 2827442, at *3-4, and appellants do not raise the issue on appeal.

## II.  DISCUSSION

### A. The Finality Requirement

We review the district court's decision to confirm Notre Dame's damages awards de novo.  Cytyc Corp., 439 F.3d at 32. Federal courts are generally loath to disturb arbitral awards, deferring to arbitrators if they are "even arguably construing or applying the contract and acting within the scope of [their] authority."  Id. (alteration in original) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). As we have recognized, '[j]udicial review of binding arbitration awards is necessarily limited so as to "maintain[] arbitration's essential virtue of resolving disputes straightaway."'  Farnsworth v. Towboat Nantucket Sound, Inc., 790 F.3d 90, 99 (1st Cir. 2015) (second alteration in original) (quoting Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 588 (2008)).

The FAA provides that, "[w]ithin three years after an arbitral award falling under the [New York] Convention is made," a party may seek judicial confirmation of the award.  9 U.S.C § 207 (emphasis added).  Appellants suggest that, because Award No. 4 was issued on April 11, 2017 and Notre Dame did not seek confirmation until May 2020, the language of 9 U.S.C. § 207 precludes confirmation.  But this textual argument overlooks the relationship between the meaning of "is made" in § 207 and the Convention requirement that an award be "binding" to be confirmed.

- 7 -

Confirmation under 9 U.S.C. § 207 is mandatory unless "one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention" applies. Id. One such exception provides that "[r]ecognition and enforcement of the award may be refused" if "[t]he award has not yet become binding on the parties." New York Convention art. V(1)(e). Because an award can only be subject to judicial confirmation if it is binding on the parties, we do not think an award can be "made" under § 207 until the award is binding on the parties. Interpreting "is made" to require only that a foreign arbitral award "is issued" by an arbitrator would permit the statute of limitations to run even where the "non-binding" exception to confirmation in Article V(1)(e) prevented the winning side from securing judicial confirmation of the issued award. See New York Convention art. V(1)(e).

Our conclusion that an award "is made" within the meaning of 9 U.S.C. § 207 when it becomes binding on the parties is consistent with our precedent in the context of domestic arbitral awards, see Hart Surgical, 244 F.3d at 233, 235 (interpreting "is made" in 9 U.S.C. § 9 to mean "is made final"), and flows directly from our reasoning in Notre Dame I, 861 F.3d at 291. There, we held that the New York Convention's textual requirement that a foreign arbitral award be "binding" is "conceptually indistinguishable" from the judicially constructed requirement

- 8 -

that a domestic arbitral award be "final" to be subject to judicial confirmation under the FAA. 861 F.3d at 291. We observed that this interpretation was "in harmony with cases from outside this circuit that have addressed the Convention standard for judicial confirmation with the domestic law vocabulary," id., and cited in support of this equivalence the Ninth Circuit's observation that "[t]he not-binding defense in the Convention's Article V(1)(e) may be invoked when an action to confirm or enforce an arbitration award is filed before the award has become final," id. (citing Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1100 (9th Cir. 2011)), and district courts' equation of the requirements of 'binding' and 'final,' id. (citing Ecopetrol S.A. v. Offshore Expl. & Prod. LLC, 46 F. Supp. 3d 327, 336 (S.D.N.Y. 2014), and Daum Glob. Holdings Corp. v. Ybrant Digit. Ltd., No. 13 CIV. 03135, 2014 WL 896716, at *2 (S.D.N.Y. Feb. 20, 2014)). The key consideration in this case, therefore, is when the damages awards became binding on the parties. And, as we concluded in Notre Dame I, it was appropriate to scrutinize foreign arbitral awards "by the familiar finality standard that[,] '[n]ormally, an arbitral award is deemed "final" provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration.'" Id. (second alteration in original) (quoting Hart Surgical, 244 F.3d at 233).

- 9 -

In a different context, the Second Circuit in Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala, 989 F.2d 572 (2d Cir. 1993), held that a foreign arbitral award is "made" for FAA purposes when it is "originally decided by the arbitrators," rather than when the appeals process provided by the arbitral forum state has been exhausted.  Id. at 581 (holding that § 207's three-year statute of limitations was triggered by the issuance of the "final award" by a French arbitral tribunal, rather than upon the subsequent dismissal of an appeal before the Court of Appeal of Paris, whereupon the award "became final" as a matter of French law).

TJAC and ZVI cite Seetransport for the proposition that the statute of limitations for foreign arbitral awards begins to run when an award is "decided by the arbitrator and issued."  We see no daylight, however, between Seetransport's "originally decided by the arbitrators" test and our own intent-based approach to determining arbitral finality.  Indeed, the Seetransport court explicitly contrasted a previous "interim award issued" by the arbitrator (which did not trigger § 207's statute of limitations) with the arbitrator's "final award" (which did).  989 F.2d at 574. It was thus only upon issuance of the latter, which definitively and comprehensively resolved the claims at bar, that the award was "made" and "decided by the arbitrators."  Id. at 581.  As such, the Second Circuit deemed this decree a "final award" in much the

same way as we ordinarily understand arbitral finality -- that is, reflecting the "arbitrators' intention to resolve all claims submitted in the demand for arbitration." Notre Dame I, 861 F.3d at 291 (quoting Hart Surgical, 244 F.3d at 233).[4]

Having established this legal background, we now proceed to evaluate the parties' arguments about when the awards became final.

## B. The Interim Arbitral Awards Were Not Final

On appeal, TJAC and ZVI contest the district court's determination that the damages awards only became final on March 31, 2020, at which time the arbitrator issued Award No. 7, resolving the last remaining subcategory of damages and "definitively and comprehensively settling the parties' dispute

---

[4]  Moreover, our reading of Seetransport as incorporating an arbitral intent standard of finality is in harmony with the Second Circuit's jurisprudence in the domestic arbitral context. There, the Second Circuit held that an arbitral award that fails to conclusively dispose of a separate independent claim -- and is thus "nonfinal" as a question of arbitral intent -- does not trigger the one-year statute of limitations established by 9 U.S.C. § 9. See Kerr-McGee Refin. Corp. v. M/T Triumph, 924 F.2d 467, 471 (2d Cir. 1991) (questioning "whether the one-year limitation should apply to a party seeking confirmation of an award that does not end the arbitration, since such a rule 'will make arbitration more complicated, time consuming and expensive,'" but holding that the court "need not resolve this issue" because "the Partial Final Award did not finally dispose of a separate independent claim, thus rendering the one-year limitation inapplicable in any event" (citation omitted)); see also Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 158 (2d Cir. 2003) (noting that "section 207 . . . is analogous to section 9 of the FAA," rendering precedent concerning § 207 "difficult to distinguish" from cases concerning § 9 (citing Seetransport, 989 F.2d at 580-81)).

- 11 -

regarding damages." Notre Dame II, 2021 WL 2827442, at *3. Appellants argue that Award No. 4 was, in fact, a final arbitral award, for which the FAA's three-year statute of limitations for judicial confirmation began to run on April 11, 2017. Because Notre Dame moved for judicial confirmation on May 15, 2020, appellants contend that the award (and, derivatively, the portion of Award No. 6 granting interest on Award No. 4) is no longer judicially confirmable. In support of their argument, appellants place great emphasis on language in Award No. 4 referring to the arbitrator's "final views" and stating that the "[d]eterminations herein served are final Quantum sums." Seizing on these two usages of the word "final," and suggesting that the parties intended for each interim damages award to be confirmable upon issuance, TJAC and ZVI argue that the district court erred in determining that the interim award was nonfinal, such that confirmation in this case would not be barred by the statute of limitations, because it did not resolve all outstanding damages claims. On this telling, although various claims remained to be adjudicated when Award No. 4 was issued, the award was sufficiently discrete and definitive -- and its "plain language" adequately probative of the arbitrator's intent -- to be final upon issuance.

Careful examination of the awards at issue leads us to conclude otherwise. TJAC and ZVI first encounter a formidable obstacle in their attempts to evade judicial confirmation upon

confronting our circuit's well-worn finality standard, by which we "[n]ormally" deem an award final if it reflects the arbitrator's intent to resolve "all claims submitted in the demand for arbitration." Notre Dame I, 861 F.3d at 291 (alteration in original) (quoting Hart Surgical, 244 F.3d at 233). By its plain terms, Award No. 4 did not purport to resolve every claim submitted to arbitration. Instead, Award No. 4 only addressed certain "Cost of Works" damages resulting from TJAC and ZVI's breach of contract, explicitly disclaiming a comprehensive resolution and noting that multiple "Heads of Claim" were "yet to be decided." Nor did the various damages awards correspond to different findings of liability at the first stage of the arbitration. Rather, all damages flowed from the same, singular liability determination on the breach-of-contract claim asserted by Notre Dame. Against this backdrop, we proceed to assess whether TJAC and ZCI furnish sufficient reason for us to deviate from our "general rule" regarding arbitral finality. See Hart Surgical, 244 F.3d at 233.

TJAC and ZVI's suggestion that the parties nonetheless agreed for the seriatim damages awards to be considered final upon issuance -- akin to their prior agreement to bifurcate the arbitral proceedings into separate and binding liability and damages phases -- does not suffice to surmount the hurdle posed by our finality standard. Noting the district court's finding that "[w]ithin the damages phase, the parties asked the [arbitrator] to adjudicate

multiple damages sub-categories," Notre Dame II, 2021 WL 2827442, at *3, TJAC and ZVI assert that the parties entered into a "unique agreement" under which the arbitrator would grant a series of "discrete, final and confirmable interim awards" during the damages phase. But TJAC and ZVI do not offer evidence that any such express or implied agreement ever existed, and we find none in the record. The fact that the parties intended for the arbitrator to assess multiple types of damages flowing from the breach of contract, and that these damages were adjudicated in a piecemeal fashion, does not evidence an intention or agreement that the individual damage awards would be separately confirmable upon issuance. There is no parallel here to the situation we encountered in Notre Dame I, where the parties agreed to bifurcate the arbitration into separate liability and damages stages. It was only in light of that agreement that the arbitrator issued its "binding decision[] as to [l]iability."[5] See Notre Dame I, 861 F.3d at 290, 292 n.2; see also Hart Surgical, 244 F.3d at 235

---

[5] This agreement, moreover, reflected our longstanding recognition of the "legitimacy of requesting bifurcation in foreign as well as domestic arbitral determinations" and deferring to the "arbitrator's understanding of finality on a bifurcated component" of the arbitration. Notre Dame I, 861 F.3d at 293. This precedent does not support the disaggregation of a damages proceeding within a bifurcated arbitration into separate and independently final sub-proceedings. To the contrary, our decision in Notre Dame I reflected an understanding that the quantum phase of the arbitration would consist of one "separate proceeding to assess damages," not multiple. Id. at 292.

- 14 -

(noting that "the definiteness with which the parties have expressed an intent to bifurcate is an important consideration" in determining whether an award is final).

Just as we find no joint agreement between the parties regarding the finality of the interim damages awards, neither do we discern any such intent on the part of the arbitrator. TJAC and ZVI contrast Award No. 4's statement that the "[d]eterminations herein served are final Quantum sums," with language in Award No. 3, concerning the same subcategory of damages, labeling that award "preliminary views" rather than a "[f]inal [d]etermination." However, appellants' entreaties to follow the arbitrator's "plain language" ignore the following lines in Award No. 4, which advise that "[t]he Awards are to be read together" and that multiple damages subcategories were "yet to be decided." In other words, as the district court recognized, the arbitrator only viewed his damages determination as "comprehensive" and therefore "final" once all the awards had issued. Notre Dame II, 2021 WL 2827442, at *3.

From that perspective, the arbitrator's admonition to read the damages awards in tandem reveals a very different picture of the arbitrator's intent from that depicted by TJAC and ZVI. Consider, for example, appellants' claim that "each Award (Nos. 4, 5, 6 and 7) resolved separate discrete issues finally and forever," being thereby "discrete, final, and confirmable" upon issuance.

- 15 -

In language mirroring Award No. 4, Award No. 5 states that it is a "final [d]ecision," according to which the arbitrator's "preliminary views are now amended & final." Among the damages assessed in Award No. 5 was an ongoing interest award granted to Notre Dame, assessed at a daily rate of £117.48. According to appellants' theory of the case, this award was final and confirmable on July 27, 2017, the date of its issuance. But in Award No. 6, issued on December 5, 2018, the arbitrator revised his previous interest determination from Award No. 5, reassessing the same ongoing interest expense to accrue at a daily net rate of £269.52. The fact that the arbitrator saw fit to subsequently amend the damages already granted in Award No. 5 -- notwithstanding that the award was labeled "final," and that over sixteen months had elapsed in between awards -- is at odds with appellants' assertion that the arbitrator intended for the interim damages awards to "definitively and forever resolve claims between the parties."

We see no evidence that the arbitrator regarded Award No. 4 any differently from Award No. 5. It is, indeed, TJAC and ZVI's position that Awards No. 4 and 5 are of the same nature, each being sufficiently "specific and discrete" to be "independently confirmable" upon issuance. This claim, however, is contradicted in the arbitrator's subsequent modification of Award No. 5, well over a year after its initial issuance. Read in

context of the overall seriatim award process, then, the arbitrator's bare use of the word "final" in these awards did not constitute a term of art or otherwise evince an intent to issue a definitive, confirmable award.[6]  See Publicis Commc'n v. True N. Commc'ns Inc., 206 F.3d 725, 728 (7th Cir. 2000) ("The content of a[n] [arbitral] decision -- not its nomenclature -- determines finality.")  Rather, it merely indicates that the arbitrator, having come to an interim (and amendable) decision on one set of issues, intended to move on to evaluate the next subcategory of damages to be considered in the proceedings.  As the district court noted, the fact that the arbitrator followed a "piecemeal approach" to evaluating the various damages -- all flowing from the same breach of contract and grouped together for apparent purposes of administrative convenience -- "does not . . . suggest that each time the [arbitrator] decided a particular component, that decision was a final arbitral award."  Notre Dame II, 2021 WL 2827442, at *3.

Given that neither the parties' conduct during the arbitration nor the arbitrator's treatment of the individual

_____

[6]     By way of contrast, we further note that the arbitrator termed the liability award at issue in Notre Dame I a "binding [d]ecision" that "cannot be changed," echoing the terminology for arbitral finality employed by the New York Convention.  See Notre Dame I, 861 F.3d at 293; New York Convention art. V(1)(e).  No comparable language can be found in the interim damages awards at issue.

- 17 -

damages award evinces an understanding that the awards at issue would be final upon issuance, we find the out-of-circuit caselaw that TJAC and ZVI recite regarding the confirmability of interim damages awards to be inapposite. To be sure, as we have previously noted, "[s]everal circuits have recognized exceptions to th[e] general rule" of arbitral finality, according to which "an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration." Hart Surgical, 244 F.3d at 233 (quoting Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999)). We have recognized one such exception (announced in Hart Surgical and applied in Notre Dame I) that a "partial award" on liability, in a bifurcated proceeding agreed upon by the parties, can be final for purposes of judicial confirmation. However, while our ordinary rule with respect to arbitral finality is not ironclad, it does not follow that an arbitration -- once cleaved into two stages -- can be yet further fractured into multifarious sub-proceedings, each producing separate and immediately confirmable final awards.

At a minimum, the cases cited by TJAC and ZVI require that an award "finally and definitively dispose[] of a separate independent claim" in order to be confirmable. Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986); accord Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007); Rocket Jewelry Box, Inc. v. Nobel Gift Packaging Inc., 157 F.3d 174, 176

- 18 -

(2d Cir. 1998); Kerr-McGee Refin. Corp. v. M/T Triumph, 924 F.2d 467, 471 (2d Cir. 1991); Ecopetrol S.A. v. Offshore Expl. & Prod. LLC, 46 F. Supp. 3d 327, 337 (S.D.N.Y 2014). Moreover, given that judicial confirmation of interim awards constitutes an exception to the ordinary rule governing arbitral finality, these cases often involve other factors -- such as the peculiar character of the arbitration, express agreements between litigants, or unusually exigent circumstances -- that are not present here. See, e.g., Zeiler, 500 F.3d at 169 (finding certain interim awards to be final given the "unique character of th[e] arbitration, as agreed by the parties"); Publicis Commc'n, 206 F.3d at 729 (construing an order as immediately confirmable because "the order was necessary to prevent the final award from becoming meaningless"); see also Hall Steel Co. v. Metalloyd Ltd., 492 F. Supp. 2d 715, 719-20 (E.D. Mich. 2007) (cataloguing caselaw and tracing a "common feature" in many cases where "courts have found it appropriate to confirm interim awards," viz., "that the party seeking confirmation was seeking an immediate need for relief").

As we have just explained, Award No. 4 did not "finally and definitively" resolve a claim, Metallgesellschaft A.G., 790 F.2d at 283, and the parties had no agreement to treat the various damages awards as independently final and confirmable. Further, as established supra, the damages do not correspond to 'separate' and 'independent' claims, id., but rather all flow from the same

breach of contract established at the liability stage.  As such, regardless of whether there are circumstances outside of the bifurcated liability award context where certain interim awards may be immediately confirmable, we do not face such a situation here.

*    *    *

"The primary purpose served by the arbitration process is expeditious dispute resolution."  Fradella, 183 F.3d at 19.  "Arbitration loses some of its luster, though, when one party refuses to abide by the outcome and the courts are called in after all for enforcement."  Publicis Commc'n, 206 F.3d at 729.  TJAC and ZVI have now twice come to us in attempts to avoid judicial confirmation.  They urge us to deviate from our ordinary approach to arbitral finality, instead adopting a rule that would force litigants in arbitral proceedings to run to the courthouse upon the issuance of interim awards lest they lose their right to judicial confirmation.

Nothing in the awards in question, our precedents, or the principles that animate our liberal approach to arbitration compels such an outcome.  Indeed, we have previously noted the risk of "creat[ing] situations at the arbitration level in which [a party] may forfeit an appeal . . . by waiting until all arbitration proceedings are complete."  Hart Surgical, 244 F.3d at 236.  Similarly, we have admonished that district courts should

not be held "open as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and . . . delaying tactics in a proceeding that is supposed to produce a speedy decision."  Id. at 233 (quoting Michaels v. Mariform Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980)).  We find that Award No. 4 was not confirmable upon issuance, and that the three-year statute of limitations established by 9 U.S.C. § 207 only began to run upon the issuance of the final arbitral award in March 2020.[7]  As such, Notre Dame's motion for judicial confirmation was not time-barred.

### III.  CONCLUSION

**Affirmed**.  Costs awarded to appellee.

---

[7]    Because we find that Notre Dame's motion for judicial confirmation of Award No. 4 was timely, we need not consider TJAC and ZVI's argument that the portion of Award No. 6 granting interest on Award No. 4 was time-barred.

- 21 -